### In re ALVORD.

(District Court, D. Connecticut. February 8, 1905.)

#### No. 1,244.

BANKRUPTCY—DISCHARGE—FAILURE TO KEEP BOOKS.

A discharge in bankruptcy is a great privilege, and demands that rea-sonable care, at least, shall be taken in advance by one who asks for it; and where a bankrupt, who was a man of business experience, failed to keep any books whatever from which his financial condition could be as-certained, he must be presumed to have intended to conceal such condi-tion, and under Bankr. Act July 1, 1898, c. 541, § 14b (2), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411], is not entitled to a dis-charge.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 752–757.]

In Bankruptcy.   On application for discharge.

Joseph R. Taylor and Samuel E. Hoyt, for bankrupt.

George A. Mullen, for opposing creditors.

PLATT, District Judge.   The referee's report finds certain facts, and upon them bases his recommendation that the bankrupt shall be discharged.   Whether his report shall be followed depends upon the construction given to the second objection to a discharge in section 14 (b) of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]) as it stands since the amendment of February 5, 1903 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1903, p. 411]).   Before amendment the objection read, "(2) with fraudulent intent to conceal his true financial condition and in contemplaton of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained."   By the amendment of February 5, 1903, the words "fraudulent  *  *  *  true  *  *  *  and in contemplation of bankruptcy  *  *  *  true" were stricken out, so that the paragraph now reads, "with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained."   This question may properly be examined by the court without lessening the force of the general rule that conclusions of fact reached by the referees, unless manifestly improper, will be uniformly accepted and acted upon.   We must examine the matter in the light of three undeniable propositions:   (1) This is a court of equity.   (2) Suitors who seek its favors must take care that their hands are unsoiled.   (3) Such a discharge is a great privilege, and demands that reasonable care, at least, shall be taken in advance by the one who asks for it.

The specific charge against this bankrupt is that, with intent to conceal his financial condition from his creditors, he failed to keep books of account or records which would disclose his condition. It is not that he failed in some respect to keep such books or records, but that he absolutely failed to do so in every respect.   The few records which he had were of no consequence, and those which he had lost or disposed of would have thrown no light on the case if they had been retained.   It might be possible, by going to the books of certain corporations with which he had been connected, to ascertain his income, but no book or record exists or has existed from which any creditor, even were he "a Philadelphia lawyer," could learn about his outgoing funds.   He was the only witness at the creditors' meeting, and it is from his own lips that we derive this information.   When he filed his petition in this court, it is clear from his own admissions that neither his creditors nor himself could, at any time since he left the Swords Lumber Company, have discovered his financial condition.   During his service as manager of the lumber company he must have learned the value of accurate bookkeeping; in fact, he must have known it earlier, or he would not have been selected for such a position.   When he left that service he was, beyond peradventure, amply equipped

with the knowledge, which educated intelligence must possess, that such reckless conduct as he has indulged in for the past three or four years is unwise and unwarranted.

The referee says that intent cannot usually be proved by direct evidence, and that one is ordinarily presumed to intend the direct natural consequences of his acts, but that there must be some testimony from which such intent can be found. The trouble with his reasoning lies right there. He does not see that he has found a condition of negligence, carelessness, and incontinence which, when found to exist, leads directly and inevitably to the inextricable confusion into which the bankrupt's financial affairs were plunged, and produces a situation which, by the referee's own reasoning, the bankrupt must be held to have intended. If in these circumstances the bankrupt can be discharged, the door will be opened to a vast quagmire of recklessness and carelessness which, by its very nature, will be disastrous to honest enterprise and thrift. If his expectations had been realized, a successful man would have been launched upon the business world; his dreams were visionary and futile, and he comes here to be absolved from his financial sins. I cannot see my way clear to help him.

Prior to the amendment of February 5, 1903, the reasoning of the referee from the conceded facts would have been unanswerable. The Congress, in its wisdom, has by that amendment seen fit to eliminate the fraud, and the further element that the fraudulent concealment should be in contemplation of bankruptcy; but it would seem that the habit of construing the paragraph as it stood before the change has not been, to the last analysis, avoided by the referee. It is impossible to reach the referee's conclusion unless there shall be found haunting the idea of intent in the statute a notion that it must involve some tinge of active and intentional moral wrong when the condition existed. If the statute said intent to "deceive" the creditors as to his financial condition, that would be another story. I cannot so construe it. When, with deliberation, the fraudulent taint was removed, the rights of the creditors were materially enlarged.

The report is rejected, and the discharge refused.