## In re NEWBURY & DUNHAM.

(Circuit Court of Appeals, Second Circuit. November 11, 1913.)

### No. 28

1. BANKRUPTCY (§ 409*)—DISCHARGE—APPLICATION—FAILURE TO KEEP BOOKS.

Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as originally passed, provided that a bankrupt might be discharged unless he had with the fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his financial condition might be ascertained. By the amendment of Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), the word "fraudulent" before the word "intent," and the word "true" before the word "financial," and the words "and in contemplation of bankruptcy" before the word "destroy," were eliminated. *Held* that, under the act as amended, it is enough to prevent a bankrupt's discharge that he has, with intent to conceal his financial condition, failed to keep books of account from which such condition might be ascertained, so that if the books failed to show his financial condition, and were kept with that intent, a discharge cannot be obtained.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

2. BANKRUPTCY (§ 409*)—DISCHARGE—FAILURE TO KEEP BOOKS.

The bankrupts at the time of their failure were doing a business of considerable magnitude; their pay roll amounting to between $14,000 and $15,000 a year, and their bank account showing that for the year ending September 13, 1907, they had deposited and checked out $57,000. The only books found by the trustee from which anything definite could be ascertained were a few checkbooks giving a false statement of the condition of the bank account. It was admitted that one of the bankrupts at various times had added $5,000 to the balance on the stubbs of such books. *Held*, that such facts were sufficient to show that the bankrupts had, with intent to conceal their financial condition, failed to keep books of account and records from which such condition might be ascertained, and were therefore not entitled to a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of Newbury & Dunham. From an order affirming the report of a Special Master sustaining exceptions to an application for the bankrupts' discharge and denying the same, they appeal. Affirmed.

Charles E. Travis and Henry B. Singer, both of New York City, for appellants.

Patrick J. Rooney and Isador Niner, both of New York City, for trustee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. [1] The law applicable to the present controversy is found in section 14b of the Bankruptcy Act, as amended in 1903. It provides, inter alia, that the judge shall hear the application "and discharge the applicant unless he has * * * (2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained." The act as originally passed contained the word "fraudulent" before the word "intent," the word "true" before the word "financial," and the words "and in contemplation of bankruptcy" before the word "destroyed." So that under the act as it now reads it is no longer necessary to prove that the bankrupt's intent was fraudulent or that his acts were done in contemplation of bankruptcy. It is enough to prevent his discharge if he has, with intent to conceal his financial condition, failed to keep books of account from which such condition might be ascertained. If, then, the books fail to show his financial condition and were kept with the intent that they should fail to show it, the bankrupt cannot be discharged.

This court, in Re Hanna, 168 Fed. 238, 93 C. C. A. 452, said of the amended section:

"It is intended to prevent a bankrupt from obtaining a discharge, if he, whether in contemplation of bankruptcy or not, for any reason, fraudulent or otherwise, has kept his books with intent to conceal his financial condition."

[2] Under the law, as thus construed, we see no escape from the proposition that these bankrupts have failed to keep the books or records from which their financial condition might be ascertained.

It is conceded that one of the bankrupts at various times added $5,000 to the balance on the stubs of the checkbooks, so that any one seeing the checkbooks, which were lying about on the office desks, would naturally believe that the bankrupts had $5,000 more in the bank than they actually had. We do not see how this admitted altering of the books can be overlooked. It was done with a purpose and the only object must have been to mislead the persons who saw the untrue entries. It was not done for mere amusement or caprice and the only motive for the alterations must have been to deceive and mislead those dealing with the firm. If the bankrupts wished to keep their balance in the bank a secret, they only had to lock up the checkbooks or keep them in some secluded place.

The bankrupts were doing a business of considerable magnitude.

Their pay roll showed an expenditure of from $14,000 to $15,000 per annum. Their account with the Riverside bank showed that for the year ending September 13, 1907, they had deposited and checked out $57,000. It is manifest that such a business could not be carried on without some system of bookkeeping and yet the evidence shows that nothing was left by the bankrupts which enabled the trustee to ascertain the most necessary details of the business. The only books found by the trustee from which anything definite could be ascertained were a few checkbooks and these gave a false statement of the condition of the bank account. It will not do to ignore such proof. The books were in fact false and gave an untrue statement of the balance in the bank. It is not necessary to show that creditors have actually been deceived. Certainly those who saw the entries must have been deceived. They must have thought that the bankrupts had $5,000 more in the bank than they actually had. At least they must have thought that the bankrupts were doing a thriving business with so substantial a balance on hand. It is said that these additions were made so that no one but the bankrupts would know what their balance was. That if any meddlesome person picked up the checkbook he would not know what the balance was. The difficulty with this contention is that while it might deceive an impertinent interloper, it might also deceive a creditor or one expecting to become a creditor. The burden was on the bankrupts to explain these admittedly false statements and they have failed to do so. The policy of the law is to deny a discharge to a bankrupt who entirely fails to comply with its requirements. When a trader doing a large business fails to keep books or records from which his financial condition can be ascertained, the law, in the absence of any reasonable explanation, will presume an intent to conceal. No other inference can justly be drawn. The order refusing a discharge is affirmed.