## In re LINKER.

(District Court, S. D. New York. December, 1914.)

1. BANKRUPTCY ⟨⟩409—DENIAL OF DISCHARGE—FAILURE TO KEEP BOOKS.
    Under Bankr. Act July 1, 1898, c. 541, § 14, 30 Stat. 550 (Comp. St. 1913, § 9598), providing for the discharge of a bankrupt unless he has, with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained, the failure to keep such books of account with intent to conceal his financial condition prevents a discharge, though the bankrupt's intent was not fraudulent, and though his acts were not done in contemplation of bankruptcy.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. ⟨⟩409.]

2. BANKRUPTCY ⟨⟩409—DENIAL OF DISCHARGE—FAILURE TO KEEP BOOKS—EVIDENCE.
    Where it is shown that no books of account, or no proper books, were kept by a bankrupt, the court may infer, from such failure to keep books, an intent to conceal his financial condition.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. ⟨⟩409.]

3. BANKRUPTCY ⟨⟩409—DENIAL OF DISCHARGE—FAILURE TO KEEP BOOKS—EVIDENCE.
    Where, though a bankrupt had his stock of goods insured for $4,000, and probably at times had a larger stock than that, and was doing a considerable business, he kept no stock book, sales book, slips of sales, nor record of moneys that came in, and no book at all, except a check book, and though he was indebted for borrowed money, no record thereof which would show any one that he owed debts of that kind was kept, and neither he nor any one else could have told his financial condition from the books, papers, or memoranda which he said he kept, the facts

---
⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

showed a failure to keep books with an intent to conceal his financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. ☞409.]

In Bankruptcy. In the matter of Joseph Linker, bankrupt. On report of the referee recommending a discharge. Discharge denied.

A. M. Potter, of Yonkers, N. Y., for bankrupt.

J. B. Stephens and Wm. Lesser, both of New York City, opposed.

HOUGH, District Judge. The referee's report dwells principally upon the specification which alleged the obtaining of property on credit upon a materially false statement in writing made by the bankrupt to any person for the purpose of obtaining credit from such a person. The very careful report on this head is a perfect instance of the importance of seeing and hearing witnesses. The referee has found as a fact that the bankrupt "did not knowingly make a false statement as a basis for procuring goods on credit."

[1] The gist of this finding is the word "knowingly," and I am not prepared to disagree with a conclusion so obviously based on the personality of the bankrupt. As to this specification the finding of the referee is sustained. The other specification, which was likewise overruled, related to the alleged failure of the bankrupt to keep any books of accounts from which his financial condition might be ascertained, "with intent to conceal (said) financial condition." As to this objection the referee says that he found "no evidence of any fraudulent intent in his failure to keep more perfect accounts." As was pointed out in Re Newbury & Durham (C. C. A. 2d Cir.) 31 Am. Bankr. Rep. 365, at page 366, 209 Fed. 195, at page 196, 126 C. C. A. 207, at page 208, the act as it stands at present has omitted the word "fraudulent," which was originally in section 14, so that:

"Under the act as it now reads it is no longer necessary to prove that the bankrupt's intent was fraudulent, or that his acts were done in contemplation of bankruptcy. It is enough to prevent his discharge if he has, with intent to conceal his financial condition, failed to keep books of account from which such condition might be ascertained."

[2] When it is once shown that no books of account, or no proper books, were kept by the bankrupt, the court may infer from such failure to keep books an intent to conceal his financial condition. In re Weston (C. C. A. 2d Cir.) 30 Am. Bankr. Rep. 647, 206 Fed. at pages 282, 283, 124 C. C. A. 345.

[3] It is evident from the testimony herein that no creditor or expert accountant could ever have discovered the bankrupt's financial condition from the books, papers, or memoranda which he says he kept, and I consider it obvious from the bankrupt's own evidence that he himself could not tell from such books, papers, etc., how he stood at any given time. He kept no stock book, nor sales book, nor slips of sales, nor record of moneys that came in, and no book at all except a check book. He was indebted for borrowed money, and finally went into bankruptcy on the petition of creditors of that kind (as has been

asserted in argument and not denied). Yet confessedly he had no sort of record which would show to any one that he owed debts of this kind.

When a bankrupt fails to keep a record of borrowed money (he be- ing in mercantile business), I am still of the opinion expressed in Re Brenner (D. C., N. Y.) 20 Am. Bankr. Rep. 644, 166 Fed. 931. It is, of course, always open to a bankrupt to show that he was ignorant, careless, intended no wrong, etc.; but each case must stand upon its own facts, so that the inquiry always is whether the inference of intent is overset by the evidence given. In this case Linker transacted no small business, his stock was insured for $4,000, and he probably at times (on his own showing) had a larger stock than that. He scheduled a stock of that amount. It is to me inconceivable that a man doing the kind and amount of business that Linker did could have failed to keep books for any other reason than an intent to conceal.

It follows that, as to this ground of objection, I disagree with the referee and deny a discharge.