In re JANAVITZ.

JANAVITZ v. ARBUTHNOT–STEPHENSON CO.

(Circuit Court of Appeals, Third Circuit.   February 6, 1915.)

No. 1867.

1. BANKRUPTCY ☞409—DISCHARGE—FAILURE TO KEEP BOOKS.
  One conducting a department store, whose bookkeeper left some months before the bankruptcy, after which no books at all were kept by which the condition of the business could be ascertained, may be properly held to intend the natural consequence of his acts to conceal the condition of the business, so as not to be entitled to discharge in bankruptcy.
  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757;   Dec. Dig. ☞409.]

2. BANKRUPTCY ☞414—DISCHARGE—FAILURE TO KEEP BOOKS—EVIDENCE OF INTENT.
  The testimony of the bankrupt and of his agent, who had charge of the business, that there was no intent to conceal the condition of. the business by the failure to keep books, is admissible to refute the presumption of such an intent, but is not conclusive.
  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ☞414.]

3. BANKRUPTCY ☞409 — DISCHARGE — FAILURE TO KEEP BOOKS — ACTS OF AGENT.
  A bankrupt, who had intrusted the entire conduct of his business to an agent, may be denied a discharge because of the agent's failure to keep books with intent, in which the bankrupt did not participate, to conceal the condition of the business, since that is not a crime, but mere civil misconduct.
  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757;   Dec. Dig. ☞409.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of bankruptcy proceedings against Max Janavitz. From an order refusing a motion for discharge, opposed by the Arbuthnot-Stephenson Company, the bankrupt appeals. Affirmed

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles H. Sachs, of Pittsburgh, Pa., for appellant.

Alexander J. Barron, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This was a case of involuntary bankruptcy, begun by petition filed on July 5, 1912. A discharge was refused on two grounds: (1) Failure to keep proper books of account; and (2) fraudulently concealing assets. The special master and the District Judge sustained both objections, and the bankrupt has appealed.

The facts bearing upon the first objection are these:

Janavitz had formerly lived in Duquesne, and had been discharged in bankruptcy about 10 years before. Afterwards he carried on business in Monessen, either for himself or in partnership, finally opening a large department store in 1907 for his individual account. His wife, Rosa, always assisted her husband in his various enterprises. During the bankrupt's absence in Europe several years ago, he gave her a power of attorney (which he testified "is still in effect") to conduct the business as she thought best, including the right to hire and discharge subordinates. She was assisting him when he took sick in March, 1911, and thereafter she was practically in sole charge of the business, conducting the store, buying and selling goods, hiring and discharging clerks, and signing checks in her husband's name. After the petition was filed she furnished the data for the schedules. Her husband testified that after he returned from a hospital in January, 1912, he did not take full charge of the business, "but as much as I could I looked after the financial end of it and did the buying when I was able." In April, 1912, he fell desperately sick again, and (whether he was at home or in a sanitarium) he did not know what was being done until after the creditors' petition was filed. From January, 1907, to May 13, 1912, a capable bookkeeper had been in charge of the accounts and the cash. The books were carefully kept, so as to show the financial condition of the bankrupt at any time. But the bookkeeper asked for a larger salary, and after several months' delay—due apparently to her sense that increasing financial trouble made her continued service more than usually desirable—she went away. A substitute was provided as cashier, but she could not keep books, and from early in May there are practically no books or accounts. This is admitted, and indeed it is clear that for nearly 60 days it would have been impossible to ascertain the bankrupt's financial condition from the records of the business. The defense is made that the bankrupt's sickness and other troubles rendered his wife unable to do the work herself, or (as we understand) even to see that it was done by some other person.

Upon these facts, testified to before him, the master sustained the objection, finding that the conceded failure during two months to keep the required books was with intent to conceal the bankrupt's condition. Two questions are raised upon this appeal: (1) Would the foregoing facts justify the court in refusing a discharge to Rosa Janavitz, if she

herself were the bankrupt? and (2) if so, do these facts justify the court in holding the bankrupt liable for his wife's conduct?

[1, 2] Upon the first question the decided cases may not be altogether in harmony, but in our opinion, if Rosa were the bankrupt, she would be properly chargeable with intending the natural and probable consequences of her own acts and omissions. Re Hanna (C. C. A., 2d Cir.) 168 Fed. 238, 93 C. C. A. 452; Re Alvord (D. C.) 135 Fed. 236; Re Schachter (D. C.) 170 Fed. 683, and (we may be permitted to add) Re Goldich (D. C.) 164 Fed. 882. No doubt the testimony of Rosa and her husband was competent and relevant to refute the presumption, but it did not satisfy the master (who heard the witnesses) or the District Judge, and an examination of the record has not convinced us that their finding was wrong.

[3] This brings us to the second question: Under the facts proved, is the bankrupt chargeable with this disobedience of the act? Failure to keep satisfactory books is not a crime; it is merely civil misconduct, and we see no good reason why a bankrupt who intrusts his whole business to an agent should not be required to take the risk of his agent's conduct as in many other instances. The object of the statutory provision is to make it easy to ascertain the bankrupt's financial condition, and if the agent voluntarily disobeys this requirement the object is frustrated, and the principal may justly be visited with the consequences of his agent's misdoing. No doubt this rule may sometimes seem to operate harshly, but we think much of the attack upon it is influenced by the assumption that the conduct condemned by the act is criminal conduct, where the individual intention of the person charged is in most cases all-important. But we repeat that the intent now under examination is not to commit a crime, and should not be judged from that point of view. Principals are continually charged with serious liability for acts of their agents, even if they have forbidden the agents to do such acts, and the present situation is not as favorable as that. The agent here was in sole and complete control of the principal's business with his full consent, and we do not see how he can escape liability for her acts or omissions, when he certainly could not escape if she had been merely his bookkeeper.

It is not necessary to consider the objection that assets were fraudulently concealed.

The order appealed from is affirmed.