### In re LANDERSMAN.

(District Court, D. New Jersey. February 21, 1917.)

1. BANKRUPTCY ⊜⇒409(1)—DISCHARGE—GROUNDS FOR REFUSAL—"BOOKS OF ACCOUNT OR RECORDS."

Where the only books which had been kept by a bankrupt were one in which money due certain merchandise creditors and certain payments made to them, and one or more check books and bank passbooks, from which it would have been impossible to ascertain anything regarding the bankrupt's financial condition without making a complete inventory of the assets, such books were not "books of account or records" from which the financial condition of the bankrupt might be ascertained, and the bankrupt will be denied discharge under Bankr. Act July 1, 1898, c. 541, § 14b (2), 30 Stat. 550 (Comp. St. 1913, § 9598).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 752–757.]

2. BANKRUPTCY ⊜⇒414(1)—DISCHARGE—GROUNDS FOR REFUSAL—FAILURE TO KEEP BOOKS—INTENTION—PRESUMPTION.

The failure of a bankrupt to keep proper books and records will be presumed to have been with intent to conceal her financial condition, which was the natural and probable consequence of such failure.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Bankruptcy ⬅414(3)—Discharge—Grounds for Refusal—Intention—Evidence.

Where the evidence showed that during the six months the bankrupt was in business the assets had shrunk approximately $13,000, so that any explanation which could have been shown by books would have exhibited a deplorable financial condition, and would have aroused suspicion as to the correctness of the entries, the conclusion is irresistible that the failure to keep such books was with intent to conceal financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 722.]

4. Bankruptcy ⬅409(1)—Discharge—Grounds for Refusal—Failure to Keep Books—Omission of Agent.

The omission of the agent, to whom the bankrupt had intrusted entire control and management of the business, to keep proper account books, with intent to conceal financial condition, can be attributed to the bankrupt, so as to bar discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 752–757.]

5. Bankruptcy ⬅407(5)—Discharge—Grounds for Refusal—Acts of Agent.

Quære, whether a bankrupt proprietor of a large dry goods store may be visited with the consequences of the acts of her husband in making materially false statements in writing for the purpose of obtaining, and upon which he did obtain, property for her on credit, where he was in full and complete control of the business with her full consent, even though such statements were made without the bankrupt's knowledge or consent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 760, 761.]

In Bankruptcy. In the matter of Frances Landersman, bankrupt. On exceptions and motion to confirm the report of the special master recommending that the bankrupt be denied a discharge. Discharge denied.

Julius Henry Cohen, of New York City, for objecting creditors.
Otto A. Stiefel, of Newark, N. J., for bankrupt.

HAIGHT, District Judge. The special master, to whom was referred the objections to the bankrupt's discharge, has recommended that the discharge be denied for two reasons, viz.: (1) Because he finds that the bankrupt, with intent to conceal her financial condition, failed to keep books of account or records from which such condition might be ascertained; and (2) because she obtained property on credit upon two materially false statements in writing, made by her for that purpose. Bankruptcy Act, § 14b, cls. 2 and 3. He has also found that the objection, based on the alleged concealment of assets, has not been sustained by the evidence. I have not felt called upon to consider the correctness of the latter conclusion, both because no exception has been filed to it, and because I think it clear that the bankrupt must be refused a discharge on the first ground upon which the special master's recommendation is based.

In the early part of November, 1909, the bankrupt purchased from a concern, by which both she and her husband had been theretofore employed, the stock and good will of a dry goods store in the city of Newark, and, as part of the purchase price, gave certain promissory notes, amounting in the aggregate to $8,000, signed by her and in-

dorsed by her father.. In the following May she filed a voluntary petition, showing unsecured claims to the amount of about $23,000, and assets, at her own valuation, of about $22,000. According to her testimony, the value of the stock which she acquired when she purchased the business was from $12,000 to $14,000. During the six months that she was in business she purchased merchandise on credit, at the cost value, of approximately $27,000, and during the same time paid on account thereof only a little over $5,000. From the beginning' the business was, with the bankrupt's full knowledge and consent, under the sole management and in the active control of her husband; he purchased all merchandise, opened bank accounts in her name, disbursed all moneys, signed all checks in her name, and in every respect, and ostensibly so, conducted the business as if he were the sole proprietor thereof. He was given, according to her testimony, power to do whatever he thought best in respect to the conduct of the business. She attended at the store only a few hours in the afternoons.

[1] Her only books of account were kept exclusively by her husband; she disclaiming any knowledge whatever of what they were · or how they were kept. They consisted of what may be called, in the absence of a better name, a "ledger," in which was entered the moneys due to certain merchandise creditors and certain payments made to them, and one or more check books and bank passbooks. No record whatever was made of moneys disbursed for salary or other expenses incident to the conducting of the business, nor of the moneys that were taken in from day to day. Although it appears that an inventory was made at the time the store was purchased, and another one shortly before the petition in bankruptcy was filed, both were destroyed shortly after the times they were made, respectively. The moneys expended for salaries and other expenses, as well as those drawn by the bankrupt for living expenses, were taken from the cash received at the store from day to day. Nor was any record made, in any book or otherwise, of the bankrupt's liability on the notes which were given for the purchase price of the business, or of other moneys alleged to have been borrowed and partially or wholly repaid from time to time. There can be no doubt that the books and records which were kept would not have enabled one to ascertain the bankrupt's financial condition at any time. The only possible way in which they would have thrown any light on it was in connection with an inventory of the goods which she had on hand; and then the result would, at the best, not have been even approximate, because one or more of her large liabilities were not mentioned in the books at all. But I do not think it can be said that one, conducting a business of the size and character of this, has kept such books or records as are intended by section 14b (2), if it is necessary, in order to ascertain anything regarding her financial condition, to make a complete inventory of her assets.

[2] That her failure to keep books and records was with the intent to conceal her financial condition, in the absence of any reasonable explanation (of which there is none in this case), will be presumed, on the theory that she is chargeable with intending the natural and probable consequences of her own acts and omissions. In re Janavitz, 219

Fed. 876, 135 C. C. A. 546 (C. C. A. 3d Cir.); In re Newbury & Dunham, 209 Fed. 195, 126 C. C. A. 207 (C. C. A. 2d Cir.); In re Weston, 206 Fed. 281, 124 C. C. A. 345 (C. C. A. 2d Cir.); In re Arnold, 228 Fed. 75 (D. C. N. J.).

[3] But, in addition to this presumption, the conclusion is quite irresistible, as the special master has pointed out, that the failure to keep proper books and records was in fact for the purpose of concealing the bankrupt's financial condition. There was, in the short period during which the bankrupt was in business, a shrinkage in assets of approximately $13,000. Any explanation, which could have been shown by books or records, for such a rapid and extensive disappearance of assets, would, at the same time, have exhibited a deplorable financial condition, to say nothing of the suspicions which would have been aroused as to the correctness of the entries.

[4] It is urged, however, that, as the books were not kept by the bankrupt herself, or under her supervision or direction, and because the testimony is that she knew nothing about them, her husband's failure to keep proper books and records cannot be attributed to her, so as to bar her discharge. But the question thus presented has been authoritatively decided in this circuit adversely to the bankrupt's contention. In re Janavitz, supra. The present case cannot be distinguished from that. Here, as there, "the agent was in full and complete control of the principal's business with his [her] full consent." It follows, therefore, that the special master's report in this respect should be confirmed.

This conclusion makes it unnecessary for me to decide the interesting question whether, under the circumstances of this case, the bankrupt can be visited with the consequences of the acts of her husband in making materially false statements in writing for the purpose of obtaining, and upon which he did obtain, property for her on credit. Unquestionably, if he were the bankrupt, he should be denied a discharge. He not only made such statements, in which he omitted altogether the indebtedness of $8,000 incurred in the purchase of the business, but it admits of no doubt that he did so intentionally, knowing that they were untrue. Gilpin v. Merchants' National Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023 (C. C. A. 3d Cir.). If the special master's conclusion—that the bankrupt should also be denied a discharge because of those false statements—is based on the theory that the evidence shows that they were made with her actual knowledge and consent, I would have great difficulty in agreeing with him. While the suspicion that such was the fact is strong, there is no sufficient evidence to establish it. If, however, that was not the fact, it may be that a denial of a discharge to her simply on the ground that her husband, who was in sole and complete control of her business with her full consent, intentionally made the false statements, knowing them to be such, cannot be easily reconciled with the decisions of the Circuit Court of Appeals of this circuit in Gilpin v. Merchants' National Bank, supra, and the Circuit Court of Appeals of the Fourth and Fifth Circuits, respectively, in Frank v. Michigan Paper Co., 179 Fed. 776, 103 C. C. A. 268, 30 L. R. A. (N. S.) 623, Peck Co. v. Lowen-

bein, 178 Fed. 178, 101 C. C. A. 498, and Hardie v. Swafford Bros. Dry Goods Co., 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785.

[5] It may be, however, when Gilpin v. Merchants' National Bank is considered in connection with the later decision of the same court in the Janavitz Case, supra (which, however, dealt with a failure to keep books), that, in a case such as this, where the whole management and conduct of the business has been committed to an agent with the full consent of the bankrupt, the obtaining of property on credit for the bankrupt upon the agent's materially false statement, intentionally made for the purpose of obtaining such credit, would prevent the bankrupt's discharge, even though the statements were made without the bankrupt's actual knowledge or consent. This seems to have been the decision of the District Court for the Southern District of New York. In re Schwartz & Co., 201 Fed. 166. In that case a discharge was denied to one of the partners, who took no active part in the management of the business, but intrusted her interests to a son, who made the false statement, but who was not a partner. It seems to be difficult to conceive of any reason why the statute should be construed to bar a bankrupt's discharge because of the failure of the person whom the bankrupt had placed in complete control of his business to keep books and records (when such failure was for the purpose of concealing the bankrupt's financial condition), and at the same time to deny a like effect to the same agent's acts in intentionally making false statements for the purpose of securing property on credit for the bankrupt. In the Gilpin Case, the statement was actually signed by the principal, and it does not appear that it was known to the bookkeeper who made it up to have been false. The question considered there was as to the meaning of the word "false"—whether a statement which was simply untrue was within the statute, irrespective of the knowledge and intent of the person making it. May not a different result follow when the person who made the statement, and to whom it was known to be false, was, to all intents and purposes, the bankrupt? However, for the reason above stated, I do not attempt to decide the question.

The bankrupt will be denied a discharge, because of the failure to keep proper books and records.

---

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes