### In re AMSTER.

(District Court, N. D. Ohio, E. D. March 26, 1918.)

#### No. 6124.

1. EVIDENCE ⬡68—INTENT—PRESUMPTIONS.
   Every person must be held to intend the natural and necessary consequences of his acts.

2. BANKRUPTCY ⬡409(1)—DISCHARGE—FAILURE TO KEEP BOOKS.
   Under Bankruptcy Act July 1, 1898, c. 541, § 14, 30 Stat. 550, as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [Comp. St. 1916, § 9598]), providing that a discharge shall be denied where the applicant, with the intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account, or records from which such condition might be ascertained, a bankrupt, who conducted an extensive boot and shoe business, and whose stock in trade exceeded $10,000, must, where he failed to keep books of account, or records showing the amount of stock, liabilities, and assets, be deemed to have intended to conceal his financial condition, and so a discharge will be denied.

3. BANKRUPTCY ⬡415(3)—MASTER—FINDINGS—REVIEW.
   The findings of a special master, to whom proceedings in opposition to discharge of bankrupt were referred, should be sustained, unless clearly improper, or without evidence to support them, as the master, having seen the witnesses, was qualified to pass on their credibility.

In Bankruptcy. In the matter of the bankruptcy of Sidney A. Amster. On exceptions to the special master's report. Exceptions overruled.

A. F. Ingersoll, of Cleveland, Ohio, for trustee.
A. D. Metz, of Wooster, Ohio, for bankrupt.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WESTENHAVER, District Judge. In this matter the trustee opposed bankrupt's discharge on two grounds, of which the first seems to have been abandoned, and the second is that the bankrupt, with intent to conceal his financial condition, either destroyed, concealed, or failed to keep books of account or records from which his financial condition might be ascertained. The special master, to whom these specifications were referred, reports that the second specification is sustained by the evidence, and recommends that the discharge be not granted. The bankrupt excepts to this report, as not sustained by the evidence and as being contrary to law.

The bankrupt and a man named Power early in 1914 engaged as partners in business in the city of Wooster. The bankrupt contributed $1,000 and Power $225 as the firm's capital. In the autumn of 1915 Power retired from the firm, the bankrupt acquiring his interest therein, claiming to have paid therefor $500 in cash, although no evidence supporting this payment appears in the record, other than the bankrupt's statement, nor indicating from what source said money was derived. On October 27, 1916, the bankrupt made an assignment for the benefit of creditors, and shortly thereafter an involuntary petition in bankruptcy was filed in this court by creditors, and an adjudication of bankruptcy was made.

The business was a general boot and shoe store. The only evidence of the volume of business done is the statements of bankrupt's assets and liabilities. Prior to his assignment the bankrupt gave a statement in writing of his financial condition, showing stock in trade of $10,-000; machinery and tools, $250; accounts receivable, $462.14; accounts payable, $16,357.56; bills payable, which should be paid by persons other than the bankrupt, $3,017.80; taxes and wages, $26.04. His schedules in bankruptcy contain precisely the same items, except indebtedness for wages and taxes, which is eliminated.

The bankrupt kept no books of any kind, except, perhaps, a ledger showing cash received. He produced on his examination, check stubs, and canceled checks; but these do not appear to have been complete, and many stubs did not have any corresponding checks or entry. The special master finds that they were so detached, so broken and irregular, a part lost and destroyed, that no system of accounting could be established therefrom. A cash register was used, which printed automatically on slips the money received and placed therein; but these slips, the bankrupt testified, were destroyed at the end of each day, and such money as had not been taken from the till by the partners for their own personal use, clerks' wages, or other debts, was deposited in the bank.

The bank deposit book, produced at bankrupt's first examination, was either lost or destroyed before his final examination; the contention being that the examination was completed, and there was no longer any necessity for preserving this deposit book, or the check stubs and canceled checks, and on behalf of the trustee that the examination had been adjourned from time to time without a discharge of the bankrupt as a witness, and that the destruction thereof was intentional.

249 F.—17

Counsel for bankrupt earnestly urge that, while it is true no books were kept, the evidence fails to show that such failure to keep books was with intent to conceal the bankrupt's financial condition, and that, the burden of proof being on the trustee to prove this intent to the satisfaction of the court, the master's finding is without evidence to support it, and is contrary to law.

[1, 2] Section 14b of the Bankruptcy Act provides that the applicant shall be discharged unless he has "with intent to conceal his financial condition destroyed, concealed or failed to keep books of account or records from which such condition might be ascertained." Prior to the amendment of 1903 this section contained, before the word "intent," the word "fraudulent"; before the words "financial condition" the word "true"; before the word "destroyed" the words "and in contemplation of bankruptcy"; and in place of the word "such," before the words "condition might be ascertained," the words "his true."

Obviously, the meaning of the original act has been much limited by these amendments. It is no longer necessary to prove intentional fraud, or that the concealment was in contemplation of bankruptcy. It is, of course, necessary to prove that the bankrupt shall fail to keep books of account or records, and that this failure must have been with intent to conceal his financial condition. In this case, failure to keep books of account or records being admitted, the controversy comes down to the bankrupt's intent.

Many cases have been cited by counsel for bankrupt, the purport of which is that the Bankruptcy Act does not establish any standard of bookkeeping, nor require books to be kept according to any system. It is also claimed for these cases that the intent to conceal cannot in any case, as a matter of law or of evidence, be inferred merely from the failure to keep books of account or records, but that evidence of some kind showing an intent to conceal is required before the burden of proof on those opposing the discharge can be said to be maintained by a preponderance even of the evidence.

An examination of these cases, however, shows that the holdings thereof are not so broad as is contended. Some of them are cases in which the master had found in favor of the bankrupt, and the presumption in favor of the master's finding is such that the court was obliged to sustain it unless manifestly against the evidence. In other cases the business conducted by the bankrupt was of such a character that books are not ordinarily kept, or the failure to keep books was not such an unusual circumstance as to warrant any inference, one way or the other, respecting the intent of such failure. In still others, explanations of the failure to keep books of account or records, or of the omission therefrom of some part of the bankrupt's transactions, were offered, which seemed consistent with his entire good faith.

In the present case the business conducted by the bankrupt was such as to require the keeping of books of account or records. The volume of this business was such that neither the bankrupt nor any one else could know his financial condition, unless some system of books or records was kept. The absence of books of account or records

in the conduct of a mercantile business of this character and magnitude is of such significance that an inference may properly be drawn therefrom adverse to the bankrupt respecting his intention. No explanation is offered by the bankrupt as to why such books were not kept. He did not even urge that he kept a file of his bills payable, or of receipts for bills paid, a complete account of cash received or disbursed, from which, together with his bank deposit book, he was enabled, or even tried, to keep in touch with his financial condition. The reckless manner in which he bought goods on credit during the time while thus greatly in debt, and while his cash receipts were being dissipated in living or personal expenditures, is also a circumstance entitled to weight in characterizing his conduct or inferring intent.

The situation here calls for the application of the rule that every person must be held to intend the natural and necessary consequences of his acts. The necessary consequence of the bankrupt's conduct was to conceal his financial condition, both from his creditors and himself. The character and volume of his business repels the inference that he regarded the keeping of books or records as an unnecessary labor. The most inexperienced boot and shoe merchant cannot but know that a mercantile business cannot be conducted as a cobbler's or a bicycle repair shop. The failure to do that which all such merchants customarily do calls for explanation, and none is offered. The legitimate inference is that the necessary consequence was intended; that is, the suppression or concealment of the financial condition that such books and records are ordinarily intended to disclose.

Many referees and courts have held that an intent to conceal a bankrupt's financial condition could and should be drawn from like facts, especially in the case of merchants or persons other than mere laborers, mechanics, farmers, and others engaged in occupations in which books are not ordinarily or customarily kept. Collier on Bankruptcy (11th Ed.) pp. 381–383; In re Alvord (D. C.) 135 Fed. 236, 14 Am. Bankr. Rep. 264; In re Graves (D. C.) 189 Fed. 847, 26 Am. Bankr. Rep. 633; In re Hodge (D. C.) 205 Fed. 824, 30 Am. Bankr. Rep. 522; In re Newbury & Dunham, 209 Fed. 195, 126 C. C. A. 207, 31 Am. Bankr. Rep. 365; In re Linker (D. C.) 222 Fed. 173, 33 Am. Bankr. Rep. 709; In re Janavitz, 219 Fed. 876, 135 C. C. A. 546, 34 Am. Bankr. Rep. 105; In re Chass (D. C.) 238 Fed. 573, 37 Am. Bankr. Rep. 734.

[3] Furthermore, the special master saw the bankrupt and heard him and the other witnesses testify. He was therefore better qualified to pass upon the credibility of witnesses and draw inferences from the testimony than is a reviewing court. The law is well settled that in this situation the master's findings should be sustained, unless clearly improper or without evidence to support them. It may be conceded that, had the master found in favor of the bankrupt, this court would not disturb his finding; but it is equally true that his finding should not be disturbed when it is in favor of the trustee. The authorities in this respect are uniform and numerous, of which the following are cited: Callaghan v. Myers, 128 U. S. 617, 666, 9 Sup. Ct. 177, 32 L. Ed. 547; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Davis v. Schwartz, 155 U. S. 631, 636, 15 Sup. Ct.

237, 39 L. Ed. 289; In re Simon & Sternberg (D. C.) 18 Am. Bankr. Rep. 204, 151 Fed. 507; In re Wheeler, 165 Fed. 188, 91 C. C. A. 222 (7 C. C. A.) 21 Am. Bankr. Rep. 262; Collier on Bankruptcy (10th Ed.) p. 333.

The exceptions to the master's report will be overruled, and his recommendation against the discharge is approved.