### In re FEUER.

(District Court, D. Connecticut. May 3, 1926.)

No. 6818.

1. **Bankruptcy** ⊂⟹228—**Findings of referee or special master in bankruptcy, on conflicting evidence, will not be disturbed, if any evidence supports them.**

Findings of referee or special master in bankruptcy, on conflicting evidence, though not conclusive, will not be disturbed, in absence of manifest error, if there is any evidence to support them, and if they are logical and within spirit and intent of reference and law.

2. **Bankruptcy** ⊂⟹414(2)—**Where parties agreed that special master in bankruptcy might consider all testimony before him as referee in passing on petition for discharge, no one could complain that he did so.**

Though knowledge gained by referee should not be used by him as basis for findings when sitting as special master, where parties agreed that special master might consider all testimony before him as referee in passing on petition for discharge, no one could complain that he did so.

3. **Bankruptcy** ⊂⟹414(3)—**Finding that bankrupt was entitled to discharge held sustained by evidence as against objection that he concealed claim and secreted or destroyed records and account books (Bankr. Act, § 14b [Comp. St. § 9598]).**

Finding that bankrupt was entitled to discharge under Bankruptcy Act, § 14b (Comp. St. § 9598), held sustained by evidence, as against objection that he concealed claim against another bankrupt, and secreted or destroyed records and account books, and failed to keep proper records.

In Bankruptcy. In the matter of David Feuer, bankrupt. On exceptions to report of special master, recommending that bankrupt be discharged. Recommendations of special master adopted, and application for discharge granted.

Shapiro & Witte, of New York City, for Guaranty Co.

Benjamin Slade, of New Haven, Conn., for bankrupt.

THOMAS, District Judge. This matter is before the court on exceptions filed by the Guaranty Company of Maryland to the report of the referee and special master recommending that the bankrupt be discharged.

In a voluntary petition in bankruptcy, Feuer was adjudicated a bankrupt on January 17, 1924. His application for a discharge was filed in this court on March 7, 1924, and referred to a special master to hear the evidence and report the same, together with his findings of fact and conclusions of law.

To the report and findings exception is taken by the above-named creditor. These exceptions are to the effect that the bankrupt failed to keep proper books of account, secreted or destroyed records and account books, concealed a claim which he had against the National Grain Company, also a bankrupt, and of which company this bankrupt was president and one of its board of directors, and swore falsely concerning the claim. [1] The federal courts have consistently followed a rule concerning the weight to be given to the findings of a special master or referee, and while, like all other questions affecting interpretations of law and fact in bankruptcy cases, there may be found authorities contra, it has, nevertheless, come to be the generally accepted rule that, where a finding or recommendation is based upon conflicting evidence, or is an inference drawn from the evidence, the findings will not be disturbed, if there is evidence to support them, or if they are such as might reasonably be reached from the evidence. The trier, or master, has the opportunity to observe the demeanor and attitude of the witnesses and their manner of testifying. He can determine, more readily than one who merely reads the record, whether the witnesses were frank, sincere, and honest in their testimony, and his findings, in the absence of manifest error, should not be disturbed.

By this is not meant that the findings of a master or referee are conclusive, or not subject to review. They must come within the meaning, spirit, and intent of the reference and the law, and the master's conclusions must be logical. Mr. Justice Field, in discussing the findings of a special master in Kimberly v. Arms, 129 U. S. 512, on page 524, 9

S. Ct. 355, 359 (32 L. Ed. 764), said: "Its findings, like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise." See, also, Davis v. Schwartz, 155 U. S. 631, at page 637, 15 S. Ct. 237, 39 L. Ed. 289.

There is a presumption in favor of the correctness of a finding of a special master, and where it depends upon conflicting testimony, or inferences and conclusions drawn therefrom, it is not to be disturbed. The rule is well stated by Judge Ray in Re Utica Pipe Foundry Co. (D. C.) 221 F. 787, at page 790, where he said: "It has always been the practice of this court to adopt and approve the findings of the referee or special master on questions of fact, where there was a sharp dispute in the testimony, unless it clearly appeared that the finding and conclusion was either unsupported by the evidence or clearly against the weight of the evidence. It is not enough that the court thinks it might itself have arrived at a different conclusion. It must be satisfied on the record that the referee or special master was wrong in his conclusions. In this case this court cannot so say or find. It was a fair question of fact for the special master, who, as stated, saw and heard the witnesses, to decide." See, also, cases there cited.

The questions involved in the case at bar concern the conduct of the bankrupt while an officer of the National Grain Company, as well as in the preparation of his own schedules. I am more or less familiar with the ramifications of the complex situations which have arisen and which seem to continue to arise in connection with the National Grain bankruptcy. Many examinations of Feuer were had by various interested parties with reference to the business of the National Grain Company and in connection with his management of its affairs as its directing head. Some were conducted under the authority of the creditors' committee, and some by attorneys representing individual claims as well as by others. The record of the examinations of Feuer are extended and detailed.

[2] As this court has previously held, knowledge gained by a referee should not be used by him and form the basis for findings when sitting as a special master; but here it is undisputed that the parties agreed that, in the interest of time and to avoid expense, the special master should be free to consider any and all of the testimony taken before him as referee for the purpose of passing upon the petition for a discharge. Such having been the course of conduct of the parties to this proceeding, no one can now complain that the master took into consideration evidence adduced before him as referee.

[3] Having disposed of the preliminary matters incident to this review, we now pass to a consideration of the real questions of this inquiry. Section 14b of the Bankruptcy Act of 1898, as amended (Comp. St. § 9598), sets forth certain acts of a bankrupt, which, if committed, and are found to have been committed, defeat a discharge. It is the contention of the creditor complainant that Feuer had a claim of approximately $15,000 against the National Grain Company which he failed to list in his own schedules. Such of his books as have been examined, it is claimed, show that he owed the company $12,900. During the course of Feuer's examination, he testified that he did not know whether he owed the corporation money or whether the corporation owed him. In the course of his examination he remarked: "So the corporation owes me $15,000, instead of my owing the corporation $12,949."

That remark, by itself, might or might not tend to show an improper motive or intent; but I conclude that it is merely corroborative of the generally confused state of affairs of both the corporation and this bankrupt, and is indicative of surprise, and not intent, because an examination of the testimony and the record shows that the affairs of this bankrupt and the National Grain Company were intermingled and commingled to such an extent that it is doubtful as to whether any of its officers knew exactly where they stood. The stock of the corporation was closely held, and the individuals who composed it loaned to the corporation and borrowed from the corporation, and so dealt freely back and forth and with the consent of the officers of the corporation. It must be noted that the National Grain Company was a very large concern, that its daily transactions were many, that its daily purchases ran into very large sums of money, and its annual business was many hundreds of thousands of dollars. It seems to me that there is adequate support in the record for the special master's conclusion that Feuer, "when occasion required, lent his personal cash and credit to the company." Nor can I say that this was an unreasonable or illogical inference and conclusion, when all the facts and circumstances are considered. It seems apparent that, in whichever schedule the claim appeared, since both the corporation

and the individual are bankrupt, Feuer could not profit by his failure even to list it.

In the conduct of the corporation business nine bookkeepers were continuously employed. The evidence further shows that Feuer's office, from which he directed the corporation business, was also the office from which he conducted his own business, and in which his own as well as the company books were kept, although some of the books of both were kept in a New York office. These books were numerous and voluminous, as they necessarily had to be to keep track of the very extensive business which they were running.

At one of the later hearings, two check books could not be produced by Feuer, nor could they be found. The creditor complainant contends that the trier must infer that those check books must have been concealed, or their absence fully explained, which is true. But the special master found that their absence had been explained. He was familiar with the entire proceedings. He knew that all of the books had been examined by two different sets of accountants, that they had been in the possession of these accountants, and that they had been handled by various persons interested as attorneys and by others. After considering all of the facts and circumstances in this connection he concluded as follows: "I cannot find that, with intent to conceal his true financial condition, he either concealed or destroyed these books." And with that conclusion I concur.

Counsel for the exceptant cite In re Newbury & Dunham, 209 F. 195, 126 C. C. A. 207, in support of their contention, but an examination of the opinion will disclose the fact that the case is not pertinent to the question at bar. First, it appears there that the business was a very small one, with a pay roll of only $14,000 to $15,000 per annum, and that the bankrupts had deposited and checked out about $57,000 per annum. In the case at bar the deposits were in excess of $1,000,000 per annum. In the Newbury Case it was conceded that $5,000 was added to the balance on the stubs of the check books, showing $5,000 more than the concern really had in the bank, and this was found, as a fact, to have been made with intent to mislead those dealing with the firm. In addition, those check books were the only books found in their possession and the only books they kept.

In the instant case we have entirely different facts. Here there were kept regular books of account, such as are regularly found in any large business house. The set of books for this purpose was complete, and all such books were kept by nine bookkeepers, and finally, when bankruptcy ensued, were turned over to the receiver and his accountants, who had them for a period of a few months, and then in turn to the trustee and his accountants, who had the use of them for a further period of time. It is to be noted that, of all of the books referred to, only these two check books were missing. It does not seem to me that such facts and circumstances meet the provisions of section 14b of the act. In the Newbury & Dunham Case, supra, Judge Coxe, in stating the rule, at page 197 (126 C. C. A. 209) said: "The policy of the law is to deny a discharge to a bankrupt who entirely fails to comply with its requirements." In the case under consideration quite the opposite appears from the record; and here there is no claim concerning falsity.

Counsel also cite In re Breitling, 133 F. 146, 66 C. C. A. 212, 13 Am. Bankr. Rep. 126, in support of their contention. There the bankrupt admitted that he failed to show in his schedules property contracted to be sold by him a few days before filing his petition in bankruptcy, and attempted to justify his omission by stating that it was done on advice of counsel. There the court found that the bankrupt purposely retained and concealed from his creditors that to which he was not entitled, and knowingly made false oath to his schedules, and so, of course, denied the discharge. The facts there are not the facts here.

In re Greenberg (D. C.) 114 F. 773, 8 Am. Bankr. Rep. 94, cited in opposition to the discharge, is likewise not in point. There the bankrupt failed to keep true accounts of his business transactions, which were limited in amount and number and concerned payments to relatives.

I have examined the other cases cited and relied upon, and conclude that each case not only shows different facts from the case at bar, but that the rule is laid down that each case must depend for its result upon the particular facts in each particular case, and, further, the rule is restated in different ways respecting the special master's findings, as indicated earlier in this memorandum.

In reaching his decision the special master said, inter alia: "In arriving at the conclusions noted, I give great consideration to the fact that the bankrupt, in his own and in the Grain Corporation's proceedings, has been under formal examination a score of times; has never asked for a postponement; has voluntarily presented himself at a minute's notice; has seldom, if ever, pleaded lack of memory; and upon reclamation and other collateral hearings has apparently given all informa-

tion asked for." After an examination of this record, I concur in the conclusion reached and as stated by the special master.

I have examined the remaining specifications, and I am of the opinion that they affect the activities of the Grain Company only. While the activities of the bankrupt, as an individual, and the question of his discharge, confer the right to search into his corporate management, I am unable to find in this record anything which would justify me in overruling the conclusions stated by the special master. To do so I would have to be convinced that his findings and conclusions are without evidence to support them, or are conclusions reached illogically, or in violation of some principle of law, and this I cannot do. It is unnecessary, in view of the conclusions reached, to consider the question of the form of the exceptions, as I have treated them as though they were in proper form.

It follows, therefore, that the recommendations of the special master are adopted, and the application for a discharge is granted; and it is so ordered.