In re Michael R. McGOWAN, Debtor.

LONG ISLAND TRUST COMPANY,
Plaintiff,

v.

Michael R. McGOWAN, Defendant.

Bankruptcy No. 181–11144–21.
Adv. No. 181–0346–21.

United States Bankruptcy Court,
E. D. New York.

March 31, 1982.

Morton B. Dicker, The Legal Aid Society, New York City, for debtor; Arthur Cowan, of counsel.

Bloom & Amrod, P.C., Garden City, N. Y., for plaintiff Long Island Trust Co.

## OPINION and ORDER

CECELIA H. GOETZ, Bankruptcy Judge:

In this Chapter 7 proceeding brought under Title 11 of the United States Code, a complaint has been filed objecting to the discharge of Michael R. McGowan by Long Island Trust Co., a creditor of the debtor. The complaint invokes 11 U.S.C. §§ 727(a)(4)(A) and (a)(3). The debtor filed a general denial, and also requested the award of attorneys' fees. Trial was had in this matter on January 20, 1982. At the trial, Michael R. McGowan and James Colantropo, Esq., an attorney previously retained by Mr. McGowan, testified.

## FINDINGS OF FACT

1. Michael R. McGowan, the debtor herein, was the president and sole owner of Popular Specialties, Inc. ("Popular Specialties").

2. Popular Specialties was engaged in the wholesale and retail sale of beer and soft drinks, operating from a leased one-story cinderblock building located in Long Island City, New York.

3. The Small Business Administration ("SBA") had a security interest in all the assets of Popular Specialties, and in October, 1980, was owed $358,000.

4. Popular Specialties employed both a bookkeeper and accountant to keep its records, and those records are currently in the possession of Michael R. McGowan and available for inspection.

5. In October, 1980, Michael R. McGowan closed Popular Specialties down, locked its doors, and turned over the keys to the building, and its license to sell beer to his attorney, James Colantropo, Esq. He asked the attorney to take care of everything.

6. Michael R. McGowan did what he did in the belief that the SBA was entitled to all the assets of Popular Specialties, Inc. because of its lien.

7. Michael R. McGowan left an address with his attorney where he could be reached. This address was not a residence, but a mail drop near Mr. McGowan's home.

8. Some ten days after the attorney received the key to the premises, he was informed that unauthorized persons were in the building breaking and stealing bottles and removing signs. Accordingly, the attorney, without consulting Mr. McGowan, retained a Mr. Villanova to sell the inventory as best he could.

9. Subsequently, Mr. Villanova informed Mr. Colantropo that $3,000 had been realized from sales of the bottles found on the premises. Mr. Colantropo gave Mr. Villanova $500 out of the proceeds and paid over the balance to New York State tax authorities on behalf of Popular Specialties, Inc.

10. No records were maintained respecting the sale by Mr. Villanova, nor by Mr. Colantropo; no monies were ever paid over to Mr. McGowan from the sale of the inventory, nor was he supplied with any records respecting the sale.

11. Mr. McGowan filed a petition for relief on April 6, 1981.

12. At the meeting of creditors pursuant to § 341 of Title 11, Mr. McGowan was asked whether during the past three years he had owned any stocks, bonds, or United States Savings Bonds. He answered "No." He stated that because he thought the question was concerned with securities sold on the open market.

13. In response to the very next question, he admitted his interest in Popular Specialties.

14. In answering "No" when he was asked whether he had owned any stocks or bonds, it was not Mr. McGowan's intention to conceal his interest in Popular Specialties.

## DISCUSSION

Under 11 U.S.C. § 727(a)(4)(A), a discharge may be denied if a debtor "knowingly and fraudulently, in or in connection with the case—(a) made a false oath or account." The words "knowingly and fraudulently" which appear in the Code were also incorporated in § 14(c)(1) of the Bankruptcy Act, 11 U.S.C. § 32(c)(1), by reference to 18 U.S.C. § 152, which specifies that an oath made "knowingly and fraudulently" in connection with a bankruptcy proceeding is punishable by fine or imprisonment, or both.

The Second Circuit, in *In re Lovich*, 117 F.2d 612 (2d Cir. 1941), defined "knowingly and fraudulently." The court stated:

"Concededly Mrs. Lovich swore to a statement that was false; but it is equally undisputed that she believed it to be true * * *. Not every proceeding is made a criminal offense—only those that are 'knowingly and fraudulently' given. It must be an intentional untruth with respect to a material matter." 117 F.2d at 613.

*See In re Peters*, 39 F.Supp. 38 (E.D.N.Y. 1941); *Tancer v. Wales*, 156 F.2d 627 (2d Cir. 1946); 4 *Collier on Bankruptcy* ¶ 727.04 (15th ed. 1981).

Mr. McGowan's short-lived error, when asked if he had owned any stocks or bonds, was not made either knowingly or fraudulently. In terms of economic realities, there is no similarity between a share of stock in General Motors, or Texaco, or any other publicly-owned corporation and a share of stock in a failed, one-man business. In a bankruptcy proceeding, it seems most likely that in response to a question as to ownership of shares of stock or United States Bonds, obviously designed to probe possession of liquid assets, a logical person might tend momentarily to overlook the fact that ownership of a defunct company was also manifested by shares of its stock. The er-

ror was, however, quickly corrected and in no way misled anyone. To oppose discharge because of the momentary confusion on the part of the witness regarding what was being probed is frivolous.

■ Equally specious is the objection to discharge based on § 727(a)(3). This section authorizes denial of a discharge where the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained unless such act or failure to act was justified under all the circumstances of the case."

Plaintiff claims this section is pertinent because no records were maintained by Popular Specialties with regard to the disposition of the inventory left on the premises when Mr. McGowan closed down the business.

It is evidently undisputed that up to that point Popular Specialties maintained books and records, all of which are now in the possession of Mr. McGowan, and of which the plaintiff has known at least since December 5, 1979.[1]

Accordingly, discharge is opposed solely because Mr. Colantropo, who undertook to dispose of the beverages left on the premises, failed to secure a written report from Mr. Villanova regarding their sale. Plaintiff relies on cases holding that the obligation to maintain records applies even to acts of an agent. *In re Landersman*, 239 F. 766 (D.C.N.J.1917); *In re Janavitz*, 219 F. 876 (3d Cir. 1915). Likewise, it appears to be well-settled that where an individual conducts business through a corporation, as did Mr. McGowan, that his discharge can be denied where the books and records of the corporation are not properly maintained. *In re Berger*, 200 F. 325 (E.D.N.Y.1912); *In re Knapp*, 309 F.2d 480 (2d Cir. 1962).

However, § 727(a)(3) does not require that in all circumstances records be maintained. It recognizes that under certain conditions, books and records are not normally kept, and expressly provides that the failure to keep such records may be "justified under all the circumstances of the case." The circumstances under which Mr. Villanova was retained to dispose expeditiously of whatever soft drinks and beer remained in an abandoned warehouse are not those in which detailed records are likely to be kept. Consequently, the failure to keep such records is justified.

■ Moreover, to sustain an objection to discharge under § 727(a)(3), more must be shown than a failure to keep books and records. As noted in 4 *Collier on Bankruptcy* ¶ 727.04 (15th ed. 1981): "To sustain an objection to discharge under § 727(a)(3) the proof must show * * * (3) that by failure to keep such books and records or by the act complained of, it is impossible to ascertain the financial condition and material business transactions of the debtor."

In this case, Mr. Colantropo, an attorney, who was directly responsible for the sale of the inventory of Popular Specialties, has testified that $3,000 has been realized from the sale, and that of that some $500 has been given back to Mr. Villanova for his expenses, and the balance has been paid over to the New York State tax authorities on behalf of Popular Specialties. Accordingly, the lack of written records in no way impeded ascertainment of the financial condition and material business transactions of either Popular Specialties or Mr. McGowan.

Plaintiff has not carried its burden of proof under § 727(a)(3). The debtor is entitled to his discharge.

■ This proceeding has imposed a great burden on Mr. McGowan. His discharge has been unreasonably delayed by objections which have proved to be entirely without substance. He has appeared before the Court on several occasions in connection with this proceeding. But for the Legal Aid Society, he would have been forced to

---

1. These records were described in depositions of Mr. McGowan taken by plaintiff in connection with a case it brought against him in Supreme Court of the State of New York, County of Queens, and which depositions have been made exhibits in this case.

defend himself without even counsel. However, these circumstances are not sufficiently egregious to warrant an award of attorneys' fees. Accordingly, the request for attorneys' fees must be denied.

The foregoing constitutes the Findings of Fact and Conclusions of the Court.

SO ORDERED.