pleted, and he was legally entitled to a discharge. But if the time so earned by him by his previous good conduct was forfeited by his subsequent misconduct, the judgment of the court below discharging him from custody must be reversed. That is the sole question in the case, and we are of the opinion that it is answered by the provisions of the statutes referred to. Both are acts of clemency intended to invite good behavior, but the consequence of a violation of that clemency is distinctly declared by the statute itself; section 6 of the act of June 25, 1910, declaring that in the event of a violation of the parole and its revocation therefor, not only shall the time for which the prisoner was sentenced not be diminished by the time he was out on parole, but expressly declares that, in such event, he shall serve the remainder of the sentence *originally imposed*, which was, in the instant case, five years. The formerly acquired credit by reason of the previous good conduct of the prisoner, which could not become effective until the end of his term, was thus forfeited by the statute itself upon the revocation of the parole, because of the prisoner's subsequent misconduct."

The words "orignally imposed" are italicized by that court, and by emphasizing those words it is clear that that court determined that an intention was shown by Congress that, when the parole of a prisoner was revoked, he should serve, in confinement, the remaining days of the term of sentence originally imposed, which he had not actually so served, undiminished by any time allowed for good conduct.

It is true that the court says that the deduction earned by good conduct was forfeited, but it is held that the forfeiture was by virtue of this statute; that the forfeiture is not because a forfeiture is expressly by the statute provided, but only because, as held, an intention is shown that the term of sentence imposed should be served in full.

The language is as fit to deny a deduction for good conduct after revocation of parole as to forfeit that earned before. The Court of Appeals held that both the Commutation Act for good conduct and Parole Act were acts of clemency, and the provisions, therefore, are no part of, and cannot be read into, the sentence originally imposed.

Having reached this conclusion, it is not appropriate to consider other matters discussed upon the hearing.

The petition for discharge is denied.

---

## In re SIMS.

(District Court, N. D. Georgia. March 26, 1914.)

No. 3293.

BANKRUPTCY (§ 409*)—GROUNDS FOR REFUSAL OF DISCHARGE—FAILURE TO KEEP BOOKS.

Under Bankruptcy Act July 1, 1898, c. 541, § 14, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended June 25, 1910, c. 412, § 6, 36 Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1496), providing that an applicant for discharge shall be discharged unless he has, with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained, where a bankrupt, who was seriously embarrassed financially for several months prior to the bankruptcy, purchased lumber during the seven or eight months immediately preceding the bankruptcy, the larger part of which was never paid for, which he sold for over $11,000 in cash, the last of the transactions occurring but a short time before the bank-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ruptcy, but failed to keep any record, by books or otherwise, of the disposition of the proceeds of the sales, a discharge would be denied, since it might be assumed that his failure to keep books was in contemplation of bankruptcy, and it was so wholly without excuse that it must have been done with intention to conceal his financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

In Bankruptcy. In the matter of E. S. Sims, bankrupt. On objections to the bankrupt's application for discharge. Application denied.

H. W. Dent, Alvin L. Richards, Mayson & Johnson, Geo. B. Rush, and Walter R. Brown, all of Atlanta, Ga., for petitioning creditors.

C. D. Maddox, of Atlanta, Ga., for bankrupt.

NEWMAN, District Judge. I have gone carefully over the evidence recently taken in this case, and am satisfied that, under that evidence and under the evidence taken formerly, the bankrupt is not entitled to a discharge. I am compelled therefore to differ with the referee in the conclusion he reached.

It is clearly shown here that the bankrupt received over $11,000 worth of lumber, and no records whatever were kept, either by books or otherwise, to show what became of the proceeds of the sale of this lumber. It was sold by Mr. Akers, acting for Mr. Sims apparently, and Akers says, with which Sims agrees, that all the money received from the sale of said lumber was turned over to Sims. As stated, Sims shows nothing whatever by entries on books of account or by papers where this $11,000 went. The lumber was all received in 1911 and 1912, and disposed of, it seems, immediately upon its receipt at the railroad, for cash. The bankrupt's schedule of indebtedness indicates, and such I understand also to be the testimony of the trustee, that a large part of this lumber at least was never paid for.

The Bankruptcy Act, section 14, as amended June 25, 1910, c. 412, 36 Stat. 839 (U. S. Comp St. Supp. 1911, p. 1496), provides that all applicants for discharge in bankruptcy shall be discharged "unless he has * * * with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained." The claim here is, not that any books were concealed or destroyed, but that he failed to keep books of account of any kind, or records from which his financial condition might be ascertained. Now this receipt of lumber was during the fall of 1911 and winter of 1912 and along up until June, 1912. There is not a scrap of writing, so far as this record shows, from which it might be seen what he did with the $11,653 which he received from lumber.

The only question, therefore, is whether or not the receiving of this large amount of money during a period of seven or eight months immediately before bankruptcy and keeping no record whatever of his business in connection therewith, certainly failing to show in any way what became of this large sum of money, was with intent to conceal his financial condition. It is certainly fair to assume that he did it in contemplation of bankruptcy, and it was so wholly without excuse that it must have been done, I think, with intention to conceal his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    213 F.—63

financial condition. Sims' petition in bankruptcy appears to have been filed August 27, 1912, so it was but a short time before bankruptcy that the last of these lumber transactions occurred. The evidence of the bankrupt shows that he had not deposited in the banks for two or three months prior to the bankruptcy, because of the fact that garnishments were served on the banks in which he deposited. So for some time at least he must have been in a condition of serious financial embarrassment. He must have intended, of course, the actual and necessary result of his acts, and his acts, or rather his failure to act, were such as to have entirely prevented his creditors and his trustee in bankruptcy from ascertaining his financial condition.

In the case of In re Hanna, 168 Fed. 238, 93 C. C. A. 452, decided by the Circuit Court of Appeals for the Second Circuit, this is said:

"A provision intended to insure the keeping of correct and complete accounts should be rigidly enforced."

Judge Hough, in the District Court, in the Schachter Case, 170 Fed. 683, after quoting from In re Hanna, supra, says this:

"No reasonable excuse for this failure to enter an important transaction is assigned by either of the bankrupts, and the court is left to infer intent from what the bankrupts actually did and the motives reasonably to be assigned for their acts."

The application for discharge should be denied.

---

### In re SOCIAL CIRCLE COTTON MILLS.

(District Court, N. D. Georgia. April 23, 1914.)

BANKRUPTCY (§ 140*)—RIGHTS OF TRUSTEE—PRIORITIES.

Under Bankruptcy Act July 1, 1898, c. 541, § 47a(2), 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), providing that trustees as to all property in the custody, or coming into the custody, of the bankruptcy court shall be deemed vested with, the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, the right of a trustee to property in the possession of the bankrupt is superior to that of a mortgagee holding under an unrecorded mortgage good as between the bankrupt and the mortgagee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

In Bankruptcy. In the matter of the bankruptcy of the Social Circle Cotton Mills, bankrupt. Decision of the referee denying the claim of the First National Bank of Madison for priority as against the trustee of the bankrupt approved and confirmed.

Smith, Hammond & Smith and E. P. Upshaw, all of Atlanta, Ga., and Walker & Roberts, of Monroe, Ga., for trustee.

Rosser & Brandon and Slaton & Phillips, all of Atlanta, Ga., and F. C. Foster, of Madison, Ga., for intervener.

NEWMAN, District Judge. In this case the referee finds that the claim made by the intervener for priority as against the estate of the bankrupt company, and particularly against certain cotton and the

*For other cases see same topic & § NUMBER·in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes