## In re BALDWIN.

### (District Court, S. D. New York.   April, 1918.)

BANKRUPTCY ⬤⟿407(1)—GROUNDS FOR REFUSAL OF DISCHARGE—FALSE STATEMENT.

 Objections to the discharge of a bankrupt sustained, on the grounds that he made a materially false statement in writing as a basis for credit and knowingly concealed property.

In Bankruptcy. In the matter of Willard C. Baldwin, bankrupt. On motion to confirm report of special master on objections to discharge. Confirmed in part, and discharge denied.

 Saul S. Myers, of New York City, for Broadway Trust Co.

 Smith & Bowman, of New York City (Harold H. Bowman, of New York City, of counsel), for objecting creditor.

 H. Howard Babcock, of New York City (Wm. S. Bennet, of New York City, of counsel), for bankrupt.

AUGUSTUS N. HAND, District Judge. This case comes before me on a motion to confirm the report of the special master in so far as it sustains the first, third, and fourth specifications of objections to a discharge, and to reject it in so far as it finds that the second specification has not been established. The principal question argued is whether a statement in writing furnished by the bankrupt on September 13, 1912, was false. The financial statement was as follows:

### Assets.

| | |
|---|---|
| Cash on hand and in bank | $ 4,781 22 |
| Accounts receivable | 12,344 38 |
| Bills receivable | 2,677 66 |
| Merchandise, cash value | 20,945 00 |
| Fixtures | 1,000 00 |

### Liabilities.

| | | |
|---|---|---|
| Accounts payable | | $ 3,985 73 |
| Bills payable | | 7,552 14 |
| | | $11,537 87 |
| Net worth | | 30,210 39 |
| | $41,748 26 | $41,748 26 |

Willard C. Baldwin.

On the back of the paper containing the foregoing statement is this indorsement:

                September 13, 1912.

 My financial condition is as good this day as it was at the time of making statement within.          Willard C. Baldwin.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The original statement, which was given December 31, 1911, and was reaffirmed September 13, 1912, did not include the claim to any surplus which there might be arising out of certain property which had been transferred many years before to L. J. Callanan to secure certain creditors of a firm in which the bankrupt had an interest. The latter knew of this claim at all times, but says he did not realize that his interest was worth about $30,000 until he was told by Mr. Callanan in the summer of 1912 that it would yield that amount. The bankrupt had met with losses since the original statement of December 31, 1911, was rendered to about the amount of this claim so that he had no net worth on September 13, 1912, upon the basis of the former statement; but if the Callanan claim, which was omitted December 31, 1911, was included September 13, 1912, it would be sufficient to bring his assets up to the worth appearing in the old statement.

The bankrupt's counsel urges that his creditors were not interested in anything except what was his net worth, and that he correctly stated on September 13, 1912, that his financial condition was as good as it was at the time of making the former statement, because the Callanan claim would just about offset the shrinkage. If in his written indorsement of September 13, 1912, he meant that his actual financial condition was as good on that day as when he had rendered the original statement, that was obviously untrue, because the Callanan claim existed at all times, and the bankrupt had lost over $30,000 in business between the rendering of the original statement and September 13, 1912. Therefore his actual financial condition was worse to that extent. If the bankrupt meant that his financial condition was as good on September 13, 1912, as it was set forth in the former statement, even that was quite problematical, and the statement could not be regarded as a truthful disclosure by the bankrupt of the real situation. That an equity in security transferred 10 years before to pay creditors— an equity which has never up to this time yielded anything—could be regarded by the bankrupt as a proper substitute for the liquid assets mentioned in the original statement is most unreasonable. Mr. Callanan was a well-known, responsible merchant. If there was any such equity, or if anybody believed there was any such equity, in the property in the hands of Mr. Callanan, the proof of it would be more clear. As I have said above, nothing has been realized to this very day. I think the argument that the statement of September 13, 1912, was not false, while plausible, is without real substance.

Moreover, it is perfectly evident that the bankrupt's original financial statement of December 31, 1911, was false in respect to bills payable. It was apparently only based on bills payable for merchandise, and omitted both the Gatti-McQuade notes, aggregating $9,539.12, and notes held by Mrs. Harte amounting to $2,000. The statement of accounts payable was apparently equally untrue. The first specification, that the bankrupt made a materially false statement in writing, is, for the foregoing reasons, fully sustained.

The second specification, which the master did not regard as established, should likewise be sustained, namely, that the bankrupt made a false oath before Commissioner Gilchrist when he testified that his

indorsement, dated September 13, 1912, on the back of the financial statement was true. The foregoing reasoning seems clearly to establish that the second specification was well taken.

The third specification should also be sustained, namely, that the bankrupt, with intent to conceal his financial condition, failed to keep books of account. He not only kept a sort of record which a man doing a large business could hardly keep in a way consistent with honesty, but there is no pretense that he did not omit from his regular books the checks held by Mrs. Harte.

The master likewise appears to have been correct in sustaining the fourth specification of knowingly concealing property. The net worth of the bankrupt, according to the statement of September 13, 1912, was $30,210.39. This net worth must be taken to be exclusive of any consideration of the old and worthless Callanan claim. In other words, while the confirmatory statement of September 13, 1912, may give the bankrupt reasonable latitude as to the amount of assets and liabilities, provided the net worth is the same, yet the assets must, I think, be regarded as of the same general nature as those set forth in the statement of December 31, 1911. Irrespective of this, I do not think that such a vague asset as the Callanan claim, which never realized anything, can be seriously taken into account. If that be so, then the bankrupt on September 13, 1912, had a net worth of $30,000, representing the value of comparatively quick assets over liabilities. All the trustee finally realized was $4,581.33, while the liabilities at the time of bankruptcy, which was only five months later than September 13, 1912, when the financial statement was made, amounted to $55,406.09; in other words, his financial condition had changed for the worse by about $80,000. This is in no reasonable way accounted for, and indicates, if the financial statement is to be believed, a fraudulent concealment of assets.

The report of the master is sustained as to objections 1, 3, and 4, and reversed as to objection 2, and the bankrupt's discharge is denied.