### In re HARRELL et al.

#### (District Court, N. D. Georgia. March 8, 1920.)

#### No. 3954.

1. BANKRUPTCY ⚖══409(1)—DISCHARGE BARRED BY FAILURE TO KEEP BOOKS, IF WITH INTENT TO CONCEAL.

Where a bankrupt kept books until he became financially involved, and then omitted entries for the admitted purpose of concealing his condition from employés, it may properly be inferred that he also intended concealment from creditors, which bars his right to discharge.

2. BANKRUPTCY ⚖══409(1)—BANKRUPT NOT BARRED FROM DISCHARGE BY UNAUTHORIZED ACTS OF PARTNER IN FAILING TO KEEP BOOKS.

Where one member of a firm was ill, and had no part in conducting the business for some months prior to bankruptcy, failure by his partner to keep books with intent to conceal their financial condition, of which he had no knowledge, *held* not to bar his right to discharge.

In the matter of M. I. Harrell and Frank Harrell, bankrupts. On application for discharge. Granted as to M. I. Harrell, and refused as to Frank Harrell.

Frank L. Neufville, of Atlanta, Ga., for bankrupts.
Robert B. Troutman and E. E. Pomeroy, both of Atlanta, Ga., for objectors.

SIBLEY, District Judge. On May 28, 1914, an involuntary petition in bankruptcy was filed against M. I. and Frank Harrell, who had jointly leased a hotel and restaurant and operated them in partnership. Petitions for discharge, filed in time, were opposed on the grounds: First, that the bankrupts had concealed, within four months of their bankruptcy, several thousand dollars in cash, with intent to hinder, delay, and defraud their creditors; and, second, that they and each of them, with intent to conceal their financial condition, had failed to keep books of account or records from which such condition might be ascertained.

The evidence on the hearing showed that the hotels were unprofitable in general until about a month preceding the bankruptcy, when, owing to a meeting of the Shriners, several thousand dollars were taken in on the dates of May 14, 15, and 16, 1914. The bookkeeping concerning these funds, and those taken in on the days succeeding, and the disposition made of the funds, are the grounds of controversy.

---

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

First. While the books were irregularly kept, and fail to show satisfactorily the handling of the funds in controversy, the bankrupt Frank Harrell, who had personal and active charge of the business at the time, is positive in his testimony that none of the money was kept by or for the bankrupts, but all paid out to creditors. I do not find sufficient evidence to refute this testimony, and adjudge that the first ground of opposition to the discharge is unsustained by the evidence.

[1] Second. With reference to the bookkeeping the clerk testified in part as follows:

"I did not have occasion to check up the amount during Shrine week. I don't think there was any record kept of it at all. Those receipts and reports were turned over to Mr. Harrell each day, and he made his deposits from those. I don't think there was any other record kept of them. The cashier of each department turned over the receipts to Mr. Harrell."

The cashier testified that during the month preceding the bankruptcy—

"Two or three people would come up, and I would know them, and I would know that we held accounts against them. They would pay Mr. Harrell, and he would say to me not to put it on the cashbook, to give them credit on the ledger. He would go to people and tell them he was hard up and needed the money. They would pay him, after he would tell them he was hard up, and he would tell me to credit them on the ledger, instead of the cashbook."

Mr. Frank Harrell did not deny this testimony, but himself testified as follows:

"I made the deposits. I did not enter up on my books all the moneys taken in and paid out. I had a bookkeeper to keep a set of books. During the months of April, March, and February I think entries were made of all transactions had. I stopped making entries when I got really tight up, just before the Shrine. I would make some entries, and would not make others. I could not take my books and tell exactly, or approximately, what my condition was, or what transactions were probably made. I stopped making book entries, because I was tight up and didn't want the cashiers to see what financial straits I was in."

Had one never attempted to keep books, the failure to keep them would hardly be attributed to an intent to conceal his true financial condition; but where such books are kept until one becomes financially involved and is about to be put in bankruptcy, and then entries are not made, or are defectively made, there would seem to arise a case of a failure to keep books with intent to conceal one's condition. Mr. Harrell, indeed, admitted that such was his purpose with reference to his cashiers. One of the cashiers, however, testified that the omission was known to her and occurred by Mr. Harrell's direction. It is more than likely that his intent actually included his creditors. The Bankruptcy Act as amended does not require that the failure to make entries be fraudulent or be in view of bankruptcy. It is enough that the failure occurs with an intent to conceal financial condition. In re Newbury & Dunham, 209 Fed. 195, 126 C. C. A. 207. Even though, as found, the cash may not have been fraudulently concealed, a knowledge of the bankrupt's financial condition would properly involve the question of preferential payments made by him.

It is urged that most of the transactions were recorded on the ledger, if not on the cashbook. This might do in ascertaining what cash was received, but the absence of entries to show what was done with it is a material omission to keep books from which the financial condition could be ascertained, and leaves the bankrupt open to make verbal statements with no record to check him, a thing intended to be discouraged by the provisions of the law in question. It will be adjudged that Frank Harrell, upon the second ground of opposition to discharge, is not entitled thereto, and that a discharge be refused him. In re Sims (D. C.) 213 Fed. 992.

[2] Third. It appears from the evidence that M. I. Harrell became ill in October, and it is not shown that since that date he had any active connection or knowledge of the conduct of the business. Normally, when a bankrupt honestly surrenders his property to his creditors, he is entitled to a discharge, and the provision of the law disentitling him thereto on account of the failure to keep books with intent to conceal financial condition is in the nature of a penalty. It should be visited only upon one who has participated in the failure and in the intent. Under the evidence in this case it cannot be said to be established that M. I. Harrell had any knowledge of the failure, or that he had any intent whatever in connection with it. It is therefore ordered that a discharge be granted him. In re Garrison, 149 Fed. 178, 79 C. C. A. 126.