## In re ARNOLD.
### No. 3639.

District Court, D. New Hampshire.
March 8, 1932.

500

Chester T. Woodbury, of Salem, N. H., for bankrupt.

Storey, Thorndike, Palmer & Dodge and Laurence Curtis, 2d, all of Boston, Mass., for Blake Bros. & Co., objecting creditor.

William J. McDonald, of Haverhill, Mass., for William D. McFee, objecting creditor.

James A. Broderick, of Manchester, N. H., trustee, pro se.

MORRIS, District Judge.

Thomas H. Arnold of Plaistow, N. H., was adjudged a bankrupt upon his voluntary petition on January 5, 1931.

On March 30, 1931, he made application for his discharge, which was duly published and made returnable before the court on May 21, 1931.

On that date various creditors filed objections to the bankrupt's discharge.

The matter came on for hearing before the court June 24, 1931, and after a day's hearing was adjourned to some later date to be fixed by the court.

The matter came on again for hearing before the court July 10, 1931, at Boston, and at the suggestion of counsel after a day's hearing was continued for further evidence.

The next hearing was before the court at Concord September 29, 1931, since which time counsel have prepared and filed written arguments.

The original objections to the discharge were five in number, all of which appear to be embodied in the specifications of Blake Brothers & Co., as follows:

(1) The first objection alleges that the bankrupt, in an attempt to conceal his financial condition, failed to keep books of accounts or records from which such condition might be ascertained.

(2) The second objection alleges that the bankrupt for the purpose of hindering, delaying, and defrauding his creditors, transferred to Thomas H. Arnold, Inc., certain of his property known as the "Plaistow property," situated in Plaistow, N. H., and that the said property at the time of the appointment of the trustee was being held in secret trust by said Thomas H. Arnold, Inc., for the bankrupt, and that the bankrupt omitted this property from his schedule of assets and failed to reveal to said trustee the existence of the same or the facts as to the title.

(3) Objection No. 3 charges the bankrupt with knowingly and fraudulently making a false oath in omitting from his schedule of assets one eight-cylinder Packard automobile.

(4) Objection No. 4 charges the bankrupt, on or about the 8th day of May, 1929, with being the owner of securities, bonds and other evidence of indebtedness in the sum of $200,000 and for the purpose of hindering, delaying, and defrauding his creditors caused to be organized under the laws of the state of New Hampshire, a corporation known as the Thomas H. Arnold, Inc., the organizers

of said corporation being the bankrupt, his father, Thomas M. Arnold, and his mother, Carrie G. Arnold; that the corporation had no assets other than the property received from the bankrupt; that there was issued to Thomas H. Arnold 498 shares of the pretended par value of $100 each; to said Thomas M. Arnold and Carrie G. Arnold 1 share each.

(5) Objection No. 5 charges that the bankrupt transferred and conveyed securities and property to the said corporation and that a large part thereof is concealed beyond the reach of the trustee in bankruptcy.

On October 28, 1931, the objecting creditors filed a motion to amend their specifications hereinbefore filed, which after due consideration I have not allowed.

In considering the several objections it becomes necessary to outline at some length the business transactions in which the bankrupt had been engaged for a few years prior to January 5, 1931, the date on which his bankruptcy petition was filed.

From the records and testimony I find that the bankrupt was chiefly occupied in stock speculations. While there is some mention of his having been engaged in other business transactions, it is clear that during the years 1928 to 1931 his interest shifted from any former business to stock speculations, principally on margin accounts.

So far as known his stock speculations were carried on with two brokerage firms, namely, Elmer H. Bright & Co. and Hayden, Stone & Co. Not all of his transactions were carried on in his own name. There were two accounts in his own name, one with each of the above-named brokers; there were two accounts in the name of Thomas H. Arnold, Inc., one with each of the above-named brokers; there was also an account with Elmer H. Bright & Co. in the name of S. A. Arnold, the bankrupt's minor daughter; one in the name of T. M. Arnold, the bankrupt's father; and a joint account in the name of the bankrupt and his wife, Adele J. Arnold.

Exhibits covering these several brokerage accounts taken from the broker's records have been introduced in evidence.

An examination of the seven transcripts of account indicates that during the period covered there was always one active trading account. From July, 1927, to October, 1928, the active trading account was in the bankrupt's own name with Elmer H. Bright & Co. During a part of the same period, namely, from June 13, 1928, to October 11, 1928, there was a less active account with the same brokers in the name of S. A. Arnold. In October, 1928, the bankrupt was having marital troubles with his wife and an attachment in the sum of $50,000 was placed on the bankrupt's account with Elmer H. Bright & Co., and both the above-named accounts were closed out shortly thereafter leaving $50,000 in the broker's hands to satisfy the attachment. From November, 1928, to April, 1929, the active trading account appears to have been with Hayden, Stone & Co., carried on in the name of the bankrupt. In April, 1929, a new account was opened with Elmer H. Bright & Co., in the name of T. M. Arnold, the bankrupt's father, who was then and ever since has been of weak mentality. This for a short time became the active trading account, although the account with Hayden, Stone & Co. was not closed out until May 31, 1929. On May 31, 1929, a new account was opened with Elmer H. Bright & Co., in the name of Thomas H. Arnold, Inc. That remained the active trading account until closed out November 18, 1930. It was opened by the transfer to it of the securities and debit balances in the bankrupt's account with Hayden, Stone & Co. and a part of the T. M. Arnold account, although the latter account was not finally closed until October, 1930, but from May 31, 1929, it ceased to be an active account.

The only other accounts mentioned in the testimony are an account of Thomas H. Arnold, Inc., with Hayden, Stone & Co., and one in the name of the bankrupt and his wife with Elmer H. Bright & Co., neither of which became active trading accounts but appear to have been used mainly for cash transactions.

The bankrupt testified that in juggling these accounts from one name to another he had in mind the possibility of attachments being made on accounts standing in his own name.

The corporation known as Thomas H. Arnold, Inc., above mentioned, was formed in 1929 for the purpose of dealing in securities. The only persons interested were the bankrupt and his father and mother. The capital stock of the corporation consisted of 750 shares of a par value of $100 each, making a total capitalization of $75,000; 500 shares of the stock were issued; 498 to Thomas H. Arnold, the bankrupt, and one share each to Thomas M. Arnold, father, and Carrie C. Arnold, mother, of the bankrupt.

The property transferred to the corporation consisted of various securities on which the debit balance stood at about $231,279.41,

and on which the equity or value in excess of debit balance was in the vicinity of $100,000. There was also transferred to the corporation land and buildings located on Main street in Plaistow, N. H., with improvements and furnishings, valued at $28,414, subject to a mortgage of $5,800. In addition there was also transferred to the corporation one Packard roadster acquired from T. H. Arnold and one Reo speed wagon, the two valued at $3,400. The exhibits show that the securities transferred to the corporation were all turned over to Elmer H. Bright & Co., and that from May 31, 1929, until November, 1930, said securities formed the basis of an active trading account in the name of T. H. Arnold, Inc.

With reference to the real estate in Plaistow, conveyed to the corporation, it appears that it was purchased in the fall of 1927, from Mrs. Ada Vareneough, the bankrupt paying therefor approximately $30,000. The deed for the same was taken in the name of Mary L. McCarthy, who at the time was bookkeeper for Arnold. In July, 1929, the title was transferred by Miss McCarthy to Thomas H. Arnold, Inc., and on June 26, 1930, a transfer was made from the corporation to Shirley A. Arnold, minor daughter of the bankrupt then aged about seven years and for whom no guardian had been appointed. No consideration was paid for any of these transfers excepting the first one when the property was bought from Mrs. Vareneough. The bankrupt testified that the property was a gift to his daughter and for that reason he did not list it in his bankruptcy schedule of assets.

At the time the attachment above mentioned was placed on the bankrupt's account with Elmer H. Bright & Co., October, 1928, securities were sold and a credit balance of $50,974.19, was created. The bankrupt took cash or a check for $974.19, leaving $50,000 in his account subject to the attachment. At about the same time the Shirley A. Arnold account was closed out with a credit balance of $58,481.39. The bankrupt was given a cashier's check on the Merrimack National Bank of Haverhill, Mass., for this sum payable to himself although the account from which it came was in the name of S. A. Arnold. From the testimony it appears that $20,000 of this money was used to purchase United States certificates of indebtedness which the bankrupt obtained from the First National Bank of Boston. The bankrupt was unable to account for the balance of the money amounting to $38,481.39. He testified that he thought he used it to buy securities, but his books did not show the transactions. I have been unable to find in any of the bankrupt's books of account what became of this money.

The certificates of United States indebtedness above mentioned were used in starting a new account with Hayden, Stone & Co., on November 7, 1928. On April 4, 1929, the bankrupt opened a second marginal account in the name of his father, Thomas M. Arnold, with Elmer H. Bright & Co. These accounts appear to have been quite active until May 31, 1929, when the securities from the two accounts were turned over to a new account with Elmer H. Bright & Co., started in the name of Thomas H. Arnold, Inc.

The $50,000 held on the attachment in the hands of Elmer H. Bright & Co. remained intact until June 4, 1929, when $26,972.06 was transferred to a joint account with the same brokers in the name of Thomas H. and A. J. Arnold. This account was not closed until November 30, 1929. The balance of the $50,-000 which with interest amounted to $23,600 was transferred to the account of T. H. Arnold, Inc.

Mrs. Arnold testified that she supposed the entire $50,000 was transferred to the joint account; that she never had anything to do with the handling of it and never received any income from it. After the joint account was opened it remained largely an account for cash transactions.

The Thomas H. Arnold, Inc., account with Hayden, Stone & Co., which appears to have been the bankrupt's last account, was a small account opened December 3, 1930, after the closing out of the Thomas H. Arnold, Inc., account with Elmer H. Bright & Co. It was handled in much the same manner as the joint account. Certain securities were delivered to the broker, sold, and other securities bought with the proceeds. This account was not closed until January 19, 1931, when it appears that $1,000 worth of Bush Terminal shares and 50 shares of Technicolor were delivered to the bankrupt.

The creditors employed an expert accountant to make an audit of the books of the bankrupt and the various accounts of his stock transactions obtained from the brokers. From an examination of the testimony of the accountant and also from an examination of the brokers accounts, I am satisfied that large sums of money, totalling $192,937.82, were withdrawn by the bankrupt from the various accounts. From the analysis of the accountant there was an apparent profit on the bank-

rupt's stock transactions of $104,330.29. In addition to the cash various securities were withdrawn. The report of the accountant lists eleven such securities of a total value of $36,508.23, which he is unable to account for. Included among these are the shares of Bush Terminal of the value of $1,019.39 and 50 shares of Technicolor of the value of $491.05 delivered to the bankrupt January 19, 1931, fourteen days after the petition in bankruptcy was filed. It also appears that during the month of December, 1930, the bankrupt withdrew from the account in cash or checks $772.33.

Objection No. 1 charges the bankrupt with failure to keep books of account from which his financial condition may be ascertained.

The applicable statute is section 14b of the Bankruptcy Act (11 USCA § 32(b), as amended May 27, 1926, which provides that an applicant shall be discharged unless he has (2) "destroyed, mutilated, falsified, concealed or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the Court deem such failure or acts to have been justified, under all the circumstances of the case."

█ It has been said that the test to be applied is, if a competent accountant can from an examination of the books produced and in the possession of the trustee determine the true condition of the debtor, they are sufficient to justify granting the bankrupt a discharge. The reverse of the proposition should be a sufficient ground for refusing to grant a discharge, provided always that there is sufficient evidence from which the court may find an intent to conceal the bankrupt's financial condition.

█ In the case of In re Schachter (D. C.) 170 F. 683, 684, Judge Hough says: "The statute does not proscribe only such entries or omissions as are detrimental to creditors, but any failure to keep books 'with intent to conceal financial condition.' Re Hanna (C. C. A.) 168 F. 238. No reasonable excuse for this failure to enter an important transaction is assigned by either of the bankrupts, and the court is left to infer intent from what the bankrupts actually did and the motives reasonably to be assigned for their acts." See, also, In re Newbury & Dunham (C. C. A.) 209 F. 195; In re Harrell (D. C.) 263 F. 954; In re Baldwin (D. C.) 253 F. 836, 838.

█ In the instant case bankrupt's purchase and sales book ends with entries made in Sep-

tember, 1930. The latest journal entry found is in August, 1930. The last entry in the cashbook bears date of September 2, 1930.

From a somewhat lengthy and careful examination of the books of the bankrupt and of the books of the T. H. Arnold, Inc., I have been unable, with the aid of a competent accountant, to find what became of the large amounts of cash withdrawn by the bankrupt from his brokerage accounts and have also been unable to account for the disposition of the eleven securities which were listed by the accountant. Of course, much of the cash was put back into the business, either as such, or in the form of stocks and bonds; but there are large sums that cannot be accounted for.

Applying the principle applied by Judge Hough, supra, there appears to be no reasonable excuse for the failure of the bankrupt to record important transactions involving the expenditures of large sums exceeding $38,000, and I am left to infer that failure to record such transactions was with intent to conceal assets from his creditors and from his trustee in bankruptcy.

Objection No. 1 is sustained.

█ Objection No. 2 charges the bankrupt with intentionally hindering, delaying, and defrauding his creditors by transferring the Plaistow property to Thomas H. Arnold, Inc.

As already stated, the title to this property was taken in the name of Miss McCarthy and transferred by her to T. H. Arnold, Inc. The property was originally purchased in 1927 at a time when the bankrupt was solvent. The title at all times has been a matter of record and the only concealment has been of the bankrupt's interest therein which can be settled at this late date only by a plenary suit. The property is occupied by the bankrupt's wife and daughter. Mrs. Arnold has been appointed guardian of the daughter and has by leave of the probate court further encumbered the property to raise money to pay taxes and interest on the prior existing mortgage. It appears to have pretty effectually passed beyond reach of the bankrupt when it was deeded by the corporation to Shirley A. Arnold.

Objection No. 2 is not sustained.

█ Objection No. 3 charges the bankrupt with knowingly and fraudulently making a false oath in omitting from his schedule of assets one eight-cylinder Packard automobile.

The applicable statute is section 14b of the Bankruptcy Act (11 USCA § 32(b), which provides that the applicant shall be discharged unless he has committed an offense

punishable by imprisonment as herein provided. Section 29b (11 USCA § 52(b) provides imprisonment for a person who conceals while a bankrupt or after his discharge from his trustee any of his property belonging to his estate in bankruptcy or makes a false oath or account in, or in relation to any proceeding in bankruptcy.

I find with reference thereto that the Packard automobile was transferred to the Thomas H. Arnold, Inc. The bankrupt testified before the referee that he had an eight-cylinder Packard car that he had been using within a month that was registered in the name of T. H. Arnold, Inc. He further testified that there was a chattel mortgage on the car for $400 or $500 and that the holder of the mortgage seized the car.

Objection No. 3 is not sustained.

■ Objection No. 4 charges the bankrupt with organizing the corporation known as Thomas H. Arnold, Inc., and the transfer to it of assets for the purpose of hindering, delaying, and defrauding his creditors.

I find that the organization of the corporation Thomas H. Arnold, Inc., was for the purpose of hindering and delaying and defrauding his creditors. But as the corporation was organized May 8, 1929, it does not, except as a continuing cause, operate as a ground for refusing the bankrupt's discharge.

Objection No. 4 is not sustained.

■ Objection No. 5 charges the bankrupt with the concealment from his trustee in bankruptcy of securities, properties, and bonds in the amount of $200,000.

Reference has already been made to marital troubles between the bankrupt and his wife beginning October, 1928. It further appears that on April 8, 1926, an action was brought against the bankrupt in Massachusetts by Blake Bros. & Co., on a contract for the purchase of stocks. This action finally resulted in a judgment against the bankrupt for $1,603.43 upon which an execution was issued May 8, 1929, which execution is still outstanding.

I find as a fact that Thomas H. Arnold began the juggling of his accounts in October, 1928, from one broker to another and from one name to another for the purpose of concealing his assets from his wife and other creditors, and that said concealment has continued up to the time of the filing of the petition in bankruptcy.

I further find that the bankrupt was the only person financially interested in any of the various accounts under different designations which I have heretofore listed. This is amply shown by the fact that in none of the instances in which transfers were made was there apparently any accounting between the various parties in whose names the account is supposed to have stood when the account shifted from one name to another. The juggling of accounts from one name to another was only a pretense and a sham when in truth and in fact the property remained the property of the bankrupt.

I find that the bankrupt concealed and continued to conceal the shares of Bush Terminal and 50 shares of Technicolor stock hereinbefore mentioned.

■ While it is true that fraudulent conveyances as such occurring more than twelve months prior to the adjudication are not grounds for refusing a bankrupt's discharge, it is, however, true that if the property so conveyed is still recoverable at the time of the adjudication there has been such a continuing concealment of it as to constitute a ground for refusing a discharge.

Although the shares of stock last above mentioned ostensibly were the property of the Thomas H. Arnold, Inc., traceable back to the date when the corporation was organized, I find as above stated that in reality the stock belonged to the bankrupt.

Objection No. 5 is sustained.

I feel that the testimony of the bankrupt has not been characterized by that degree of frankness that is required of a debtor who is seeking to avail himself of the benefits of the Bankruptcy Act to receive a full and complete discharge from the obligations he owes to his creditors. His testimony appeared evasive, shifty, and uncommunicative.

Upon the evidence before me I find the bankrupt is not entitled to a discharge, and it is so ordered.