THE PRINCETON.

(Circuit Court of Appeals, Second Circuit. November 11, 1913.)

No. 25.

1. COLLISION (§ 56*)—OVERTAKING STEAM VESSELS—LATERAL THRUST CAUSED BY MOVING STEAMER.

The theory that a moving steamer exerts a pushing force on the water displaced, causing it to move to port and starboard, finds no recognition in standard books on navigation, and cannot be accepted by a court, against the weight of testimony of experienced mariners, as the cause of the sheer of an overtaken vessel, which brought about a collision with the overtaking vessel.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 56.*

Collision, overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

2. COLLISION (§ 53*)—OVERTAKING STEAM VESSELS—CAUSE OF SHEER.

    The sheer of an overtaken steamer, which caused a collision with the overtaking steamer, *held*, on the evidence, to have been due to her individual eccentricity, and the overtaking steamer *held* not in fault.

    [Ed. Note.—For other cases, see Collision, Dec. Dig. § 53.*]

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree of the District Court, Western District of New York, which held the respondent solely in fault for a collision between its steamer Princeton and libelant's steamer Glidden. The collision took place in that part of the Detroit river, known as "Ballard's Reef Channel." The Princeton was overtaking and passing the Glidden. The opinion of the District Judge will be found in 196 Fed. 65.

H. A. Kelley, of Cleveland, Ohio (Hoyt, Dustin, Kelley, McKeehan & Andrews and George W. Cottrell, all of Cleveland, Ohio, of counsel), for appellant.

F. S. Masten and H. D. Goulder, both of Cleveland, Ohio, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The locality, the movements of the vessels and the contentions of the respective parties are set forth very fully in Judge Hazel's opinion and need not be repeated here.

The crux of the case is the answer to the question, "What caused the Glidden's bow to sheer in towards the Princeton's?

There are three possible answers:

(1) That her navigator steered her so that her head would swing in.

(2) That through individual eccentricity she swung herself in, contrary to the attempted guidance of her navigator.

(3) That some force emanating from the Princeton either sucked the bow in or forced the stern out.

1. The first answer may be disregarded. The navigator testifies that he did not steer her into collision, and it is inconceivable that he should.

2. There is sufficient evidence to warrant a finding that the Glidden had in the past taken similar sheers without visible cause. Therefore the inference is warranted that she may have done so on this occasion.

[1] 3. We do not understand there is any contention that the movement of the Princeton "sucked" the bow in, since her stern had not yet come near enough to the Glidden's bow to exert any suction on it. The sole contention is that there is a pushing force exerted by the water displaced as a vessel's bow moves through it. The theory is that, since the displaced water must go somewhere, it must run off to port and starboard. There is no judicial acceptance of such theory, except, possibly the deliverance of a Canadian trial judge. Cadwell v. Ship Bielman, 10 Exchequer Rep. Canada, 155. It would seem that if such a phenomenon were known it would find place in standard books on navigation, and the able and experienced counsel who tried and argued

the cause would have submitted excerpts therefrom for our considera-tion. Under these circumstances we cannot take judicial notice that there is such a force. No text-book tells of it; no such phenomenon has come within our individual observation; we do not know it to be "a fact in nature." The theory advanced that because water is dis-placed at the bow it will be pushed off either side, because there is no-where else for it to go, we do not find persuasive. There is displace-ment only because the vessel moves forward; she moves forward only because the screw behind her is pushing the water back; it seems to us more reasonable to suppose that the displaced particles of water take the shortest possible course, some along the sides of the ship, some along her bottom, to the place where room has been made for them by the movement of the screw and the consequent backward movement of the particles of water which the screw has kicked. Pos-sibly this theory of what will happen may be incorrect; but certainly we cannot accept the theory advanced on the brief unless the weight of testimony supports it. But the weight of testimony is the other way. The master and mate of the Glidden say they have seen such action, the master of the Princeton apparently agrees that it exists in the case of a loaded boat—what difference a load would make as to direction of displaced water we cannot conceive—but this testimony is completely overborne by the multitude of disinterested witnesses of large experience who have testified the other way. If this force push-ing out from the bows of a moving vessel *is* exerted, it seems to us in-conceivable that none of these witnesses, who for many years have been navigating steam vessels, large and small, ever observed a move-ment of objects away from the moving vessel which such force would necessarily produce.

[2] Our conclusion therefore is that the second answer above sug-gested is the true one, and for that reason the decree is reversed, with costs of this appeal, and cause remitted, with instructions to decree in conformity with this opinion.