## THE RELIANCE.

### Appeal of HUDSON SHIPBUILDING & REPAIR CO.

Circuit Court of Appeals, Second Circuit. April 9, 1928.

No. 180.

1. **Collision** ⬅=55—Reasonable doubt as to proper navigation of overtaken vessel should be resolved in her favor.

If there is any reasonable doubt as to propriety of navigation of vessel overtaken, it should be resolved in her favor in determining liability for collision.

2. **Collision** ⬅=94—Overtaking vessel must keep out of way of vessel overtaken, which is privileged to keep its course and speed (33 USCA § 154; Inland Rules, arts. 23, 27, 29 [33 USCA §§ 208, 212, 221]).

Overtaking vessel is under duty to keep out of the way of the vessel overtaken and her tow; whereas, overtaken vessel is privileged to keep its course and speed under 33 USCA § 154 (Comp. St. § 7872), and Inland Rules, arts. 23, 27, 29 (33 USCA §§ 208, 212, 221; Comp. St. §§ 7897, 7901, 7903).

**3. Collision ⊚⟶95(4)—Overtaken vessel with tow held not at fault in libel proceeding for collision for failure to reduce speed, notwithstanding three whistle signals of overtaking boat, solely responsible on account of excessive speed (33 USCA § 154; Inland Rules, arts. 23, 27, 29 [33 USCA §§ 208, 212, 221]).**

Vessel, attempting to pass another vessel and her tow along canal, and given alarm signal, *held* solely at fault, in libel proceeding for collision; in going at rate of 4½ miles an hour, and overtaken vessel was not at fault for failure to slacken speed of 3 to 3½ miles an hour until after third signal from overtaking boat, under 33 USCA § 154 (Comp. St. § 7872), and Inland Rules, arts. 23, 27, 29 (33 USCA §§ 208, 212, 221; Comp. St. §§ 7897, 7901, 7903).

Appeal from the District Court of the United States for the Southern District of New York.

Libels by the Hudson Shipbuilding & Repair Company, as owner of the steam tug Reliance, against the Albany Socony and the Standard Oil Company of New York, which interpleaded the tug Reliance, whereupon the libelant petitioned for limitation of liability, which was granted. Both vessels were held at fault, and from an interlocutory decree in admiralty the libelant appeals. Modified.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Peter M. Speer, of New York City (Courtland Palmer, of New York City, of counsel), for appellee.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Crawley, of New York City, of counsel), for Sanday & Co.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. On November 7, 1922, at 10 o'clock a. m., the steamer Albany Socony, at the Rochester Cut in the New York State Barge Canal, about a mile and a half west of the Genesee river, came into collision with the boat Frank Jennings then in tow of the tug Reliance causing damage. Libels were filed against the Albany Socony and the Standard Oil Company of New York, its owner, and the latter interpleaded the tug Reliance in all these suits. The appellant filed its application for limitation of liability, if any, but prayed for a dismissal of the libels as to it. The court below found both vessels at fault, and the Reliance only has appealed.

At the point of collision there is a cut through solid rock, and the sides of the canal are almost perpendicular. The water surface is estimated to be about 85 to 94 feet. At this point the water flows from the Niagara river, but the velocity of the current is not shown. The Reliance was east bound from Buffalo to New York, with seven barges in tow, tandem, arranged in three sections. She had a single hawser about 300 feet in length, made fast to the last bitt of the Saratoga, the forward boat of the first section. A bridle was made fast on the stern of the Rafferty, the second boat of the first section, and to it was attached a hawser about 300 feet in length, which was made fast to the forward boat of the second section; another hawser about 300 feet in length was made fast in the same manner and ran from the stern bitt of the second section to the middle bitt of the forward boat of the third section. The Reliance supplied the motive power, and the steering was supplied by Tonawanda gear by which each boat did its own steering. The Socony was also east bound and was to the rear of the Reliance and its tow. It drew nine feet. It had a length of 150 feet and a breadth of 28 feet. As the Socony approached from the rear she gave a signal of one blast to the Reliance indicating her desire to pass at this cut in the canal. The Reliance made no reply, and the reason given therefor is that it was about to pass around a bend in the canal where the passage was very difficult. The Socony blew a second one-blast signal, at which the Reliance blew an alarm signal. This signal was given by the Reliance because her tow, after going around the bend, was not in shape to permit the Socony to pass. The Socony blew one blast, and the Reliance answered with one. Then the Socony blew three whistles to the Reliance for the latter to check her engines. This was answered by three whistles from the Reliance. The Reliance was proceeding at from three to three and a half miles prior to any signal, and, when about half way around the bend, she slowed to half speed, about one and a half to two miles. After the three-whistle signal to check was given, she was proceeding about a half or three-quarters of a mile. Prior to the signals to pass, the Socony was proceeding at the rate of four and a half miles an hour. After the Reliance answered the one signal, the engines were reduced to half speed, and she was said to be making three miles an hour. Later the engines of the Socony were stopped. It was conceded at the trial that the boats in tow of the Reliance were in proper place. The court below found that, when the Socony got close up to the Jennings, they sheered toward each oth-

er, in consequence of which the Jennings was shoved into the Bass, which in turn was thrown against the north bank of the canal.

[1] The Socony was held at fault properly, we think, in attempting to pass the boats in tow of the Reliance at too high a rate of speed, when it should have been known to her navigator that there was danger of collision in passing the other boats. The court also found the Reliance at fault for failing to reduce its speed to a minimum. This finding is based upon the testimony of the three-whistle signals given by the Socony to the Reliance to check its engines as the Socony was passing the boats in the rear section. That the Socony was blameworthy may not be doubted. It may also be said that, if there be any reasonable doubt as to the proper navigation of the Reliance, it should be resolved in her favor. The City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84; The Livingstone (C. C. A.) 113 F. 879; The Atlantis (C. C. A.) 119 F. 568.

[2] It was the duty of the Socony as an overtaking vessel to keep out of the way of the Reliance and her tow. M. J. Rudolph (C. C. A.) 292 F. 749, 742. There is a finding below that the buckling of the boats in the last section of the tow of the Reliance was due to the suction of the Socony proceeding by this tow in this narrow canal at too high a rate of speed. But we cannot agree that the Reliance was bound to navigate very slowly under these circumstances; that is, to a very minimum. The Reliance, being the overtaken vessel, was privileged, under the rules, to keep its course and speed.

[3] The Inland Rules provide that they apply to "all vessels navigating all harbors, rivers, and inland waters of the United States, except the Great Lakes and their connecting and tributary waters as far east as Montreal and the Red River of the North and rivers emptying into the Gulf of Mexico and their tributaries." 33 USCA § 154; Comp. St. § 7872. Article 23 of the Inland Rules (33 USCA § 208; Comp. St. § 7897) provides that "every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse." With this obligation resting upon the Socony, she failed to stop and reverse and accepted the responsibility for passing. No rule imposed a duty upon the Reliance to reduce her speed to a very minimum. Nor is there evidence to show that the risk of sheering through suction would be less if the Reliance had been proceeding at a minimum rate of speed with bare steerageway, or that the danger of suction be greater if she was proceeding at a high rate of speed. It would seem that suction would have a greater effect if the boats in tow of the Reliance had been proceeding with bare steerageway. The effect of suction, however, is very much in doubt. The Princeton (C. C. A.) 209 F. 199.

Reference is made to Regulation 28 of the Pilot Rules which provides that subject to the provision of rule 6, "when any float navigating any canal overhauls another float moving at a slow rate of speed, the float overhauled shall, when signaled by the overhauling float, permit same to pass, unless within 300 yards of a lock toward which the vessels are progressing, in which case the faster vessel shall not attempt to pass." These regulations are not in the record but, considering them, since they seem to be agreed upon by counsel, they do not justify holding the Reliance. The regulation provides that the overtaken vessel shall permit the overtaking vessel to pass it unless within 300 yards of a lock, which would mean that it would haul off to one side if necessary, to permit the overtaking vessel to pass, and rule 6 of the Inspectors' Rules provides signals which shall permit the overtaking vessel to proceed. The canal regulations impose upon the overtaking vessel full responsibility and upon the overtaken vessel only the duty of permitting the overtaking vessel to pass by hauling off to one side. Article 27 of the Inland Rules (33 USCA § 212; Comp. St. § 7901) provides that in obeying and construing these rules, due regard shall be had for all dangers of navigation and collision and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger. Article 29 (33 USCA § 221; Comp. St. § 7903) provides that "nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

The master of the Socony said that when he blew the first signal he was about half a mile astern of the last boat in the tow and he slowed down. When the Reliance answered, it was with alarm signals and it was not until the third signal that the Reliance gave the assenting signal. Until the Socony blew three signals to the Reliance, after the boats had sheered, the Reliance was proceed-

ing under one bell and an experienced master should only have proceeded to pass when he was satisfied that the Reliance was proceeding at a rate of speed which would justify the belief that there was a safe passage under all the special circumstances existing at the time. The Reliance had followed the ordinary practice of seamen, and it was the duty of the Socony not to attempt to pass the boat in tow until the conditions were such that it could do so with safety.

The decree will be modified, and the Socony held solely at fault.